**Peggy GREENBERG and Pamela Rossmann, Individually and on behalf of others similarly situated, Plaintiffs–Appellants,**

v.

**THE LIFE INSURANCE COMPANY OF VIRGINIA, Defendant–Appellee.**

No. 98–3156.

United States Court of Appeals, Sixth Circuit.

Argued March 10, 1999.

Decided May 19, 1999.

Rehearing and Suggestion for Rehearing En Banc Denied July 2, 1999.

508

**510**

Ron Parry (argued and briefed), David A. Baker (briefed), Arnzen, Parry & Wentz, Covington, KY, for Plaintiffs–Appellants.

David G. Hetzel, LeBoeuf, Lamb, Greene & MacRae, Hartford, CT, Robin E. Harvey (briefed), Baker & Hostetler, Cincinnati, OH, Watson B. Tucker (argued and briefed), Chicago, IL, for Defendant–Appellee.

Before: SILER, DAUGHTREY, and GILMAN, Circuit Judges.

## OPINION

GILMAN, Circuit Judge.

Peggy Greenberg and Pamela Rossmann appeal from the district court's dismissal of their putative class action lawsuit filed against The Life Insurance Company of Virginia ("Life of Virginia"). Their complaint alleged six causes of action under Ohio law relating to their 1984 purchases of what they understood to be "single-premium" life insurance policies. Life of Virginia filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. After concluding that Greenberg and Rossmann had failed to state a claim upon which relief could be granted, the district court granted the motion to dismiss. For the reasons set forth below, we **AFFIRM** in part, **REVERSE** in part, and **REMAND** the case for further proceedings consistent with this opinion.

## I. BACKGROUND

Greenberg and Rossmann are sisters. Before purchasing life insurance policies from Life of Virginia, the sisters owned three paid-up life insurance policies on the life of their father. Rossmann owned one of the policies in the face amount of $25,000, which was issued by Continental Assurance Company. Greenberg owned the other two policies. One of these policies was also issued by Continental in the face amount of $25,000, and the other was issued by Travelers Insurance Company in the face amount of $10,000.

In 1984, Life of Virginia agent Ronald Klein advised Greenberg and Rossmann that it would be financially advantageous for them to surrender their existing life insurance policies in order to purchase new

policies from Life of Virginia. According to Greenberg and Rossmann, Klein represented to them that the new policies would require only a "single-premium" payment. Klein told Rossmann that, for a $29,000 single payment, she could obtain an $80,000 life insurance policy on the life of her father, with no additional premium payments required to maintain that death benefit during her father's lifetime. Similarly, Klein represented to Greenberg that, for a $38,940 single payment, she could obtain a $150,000 life insurance policy on the life of her father, with no additional premium payments due.

In reliance upon Klein's representations, Greenberg and Rossmann surrendered their previous policies, obtained the cash values, and applied the cash toward the purchase of the purported single-premium policies from Life of Virginia. Twelve years later, they discovered that Life of Virginia would require substantial additional premium payments to keep their policies in force.

Based on diversity jurisdiction under 28 U.S.C. § 1332, Greenberg and Rossmann filed suit in the district court against Life of Virginia in May of 1997. Their complaint raised the following six claims: (1) fraud, (2) negligent misrepresentation, (3) negligent training and supervision, (4) breach of contract, (5) breach of the duty of good faith and fair dealing, and (6) breach of fiduciary duty.

Instead of filing an answer, Life of Virginia moved to dismiss all of the claims, arguing that the complaint failed to state a claim upon which relief could be granted. For the purposes of its motion to dismiss, Life of Virginia accepted all of Greenberg and Rossmann's factual allegations as true. Attached to Life of Virginia's motion were copies of the following three documents: (a) the life insurance policy that it had issued to Greenberg, including the application form, (b) the life insurance policy that it had issued to Rossmann, including the application form, and (c) an illustration that Klein allegedly presented to Green-

berg and Rossmann before they purchased the policies from Life of Virginia.

Before the district court ruled on Life of Virginia's motion to dismiss, Greenberg and Rossmann moved to convert the motion into a motion for summary judgment. They claimed that Life of Virginia's attachment of documents constituted materials outside of the pleadings, warranting a conversion of the motion. The district court denied Greenberg and Rossmann's motion to convert on the basis that it perceived no impediment to the sisters' responding substantively to the motion to dismiss and including any challenges that they had regarding the authenticity of the attachments.

After receiving an extension of time, Greenberg and Rossmann filed a memorandum in opposition to Life of Virginia's motion to dismiss. One week later, they requested leave to file a second amended complaint. The district court subsequently granted Life of Virginia's motion to dismiss the first amended complaint, and denied the sisters' motion for leave to amend, ruling that the amendment would be futile because it failed to cure any of the previous complaint's defects.

The sisters then filed a motion to alter, amend, or vacate the judgment under Rule 59(e) of the Federal Rules of Civil Procedure. They contemporaneously moved to file the deposition of agent Klein. He corroborated the sisters' claim that they had applied for single-premium policies. The district court neither ruled on the sisters' motion to file Klein's deposition nor considered it for any purpose. After the district court denied their motion to alter, amend, or vacate the judgment of dismissal, Greenberg and Rossmann filed the instant appeal.

On appeal, they contend that (1) the district court erred in refusing to convert Life of Virginia's motion to dismiss into a motion for summary judgment, given that the district court considered materials beyond the pleadings, and (2) the district

court's analysis was tainted by its erroneous factual finding that Greenberg and Rossmann knew or should have known that they had applied for and purchased life insurance policies that provided for the possibility of additional premium payments beyond the initial premium.

## II. ANALYSIS

### A. The district court's refusal to convert the dismissal motion into a summary judgment motion

#### 1. The attachments

Life of Virginia attached three exhibits to its motion to dismiss. One was a copy of the insurance policy issued to Greenberg, consisting of a cover letter, the application form, a policy data sheet, and the boilerplate language of the policy. Another was a copy of the insurance policy issued to Rossmann, consisting of the same component parts. The final exhibit was an illustration of projected values and benefits based on the life of the insured, Charles A. Phillips. Life of Virginia's agent Klein allegedly showed the illustration to Greenberg and Rossmann, but this is denied by the sisters. Because the illus-

tration is a matter beyond the pleadings and raises a disputed issue of fact, the district court properly declined to consider the document in ruling on Life of Virginia's motion to dismiss.

The face page of both insurance policies reads as follows:

> Please read your policy carefully. You, the owner, have benefits and rights described in this policy. We will pay the cash value, if any, to you on the maturity date if the insured is living on that date.
>
> The insured is named below. The beneficiary is as named in the attached application, unless later changed. We will pay the proceeds of this policy when we receive due proof that the insured died while the policy was in effect.
>
> You may return this policy within 20 days after its delivery for a refund of any premium paid. If you do, we will treat the policy as if it had never been issued. Return it to our home office, or to our agent or agency.

The policy data sheet found on page 3 of Greenberg's policy includes the following information:

SCHEDULE OF BENEFITS

SCHEDULE OF PREMIUMS
AMOUNT PAYABLE

LIFE INSURANCE
PLANNED PERIODIC PREMIUM $38,940.00 SINGLE PAYMENT

---

NOTE: MATURITY DATE SHOWN IS THAT ELECTED BY THE OWNER. IT IS POSSIBLE THAT COVERAGE WILL EXPIRE PRIOR TO THE MATURITY DATE SHOWN WHERE EITHER NO PREMIUMS OR SUBSEQUENT PREMIUMS ARE INSUFFICIENT TO CONTINUE COVERAGE TO SUCH DATE.

. . . . .

Page 3 of Rossmann's policy includes the identical information except for the amount of the single payment.

Included with both insurance policies were the application forms, which are incorporated into Life of Virginia's definition of the term "policy." In response to the planned periodic premium requested, both application forms state "–0–." For the type of "premiums payable," Greenberg's application form has a line crossed through the terms "Premiums payable." In addition, on the copy of her form submitted by Life of Virginia, there is an "X" with a line through it next to "Annually," with no other markings, but on the copy of the same form submitted by Greenberg, the application form also has an "X" marked

next to "Single Premium." On Ross-mann's form, there is an "X" placed next to "Annually" and another "X" placed next to "Single Premium" in the box below "Premiums Payable."

Finally, both policies include the following pertinent provisions in the "boiler-plate" portion of the documents:

### INTRODUCTION

This is a *flexible premium adjustable life insurance policy.* The first premium is due on the policy date. Subsequent premiums may be paid at any time before the maturity date. In return for these premiums and the insurance application, we provide certain benefits.

. . . . .

### The Policy and Its Parts

*Policy* means this policy with the attached application, any riders and endorsements. We will not use any statement in the application to deny a claim unless a copy of the application was attached to this policy when issued.

The policy is a legal contract. It is the entire contract between you and us. An agent cannot change this contract. Any change to it must be in writing and approved by us. Only our President or one of our Vice–Presidents can give our approval. READ YOUR POLICY CAREFULLY

. . . . .

### When This Policy Will Terminate

All coverage under this policy will terminate when:

-you request that coverage terminate and you return this policy;

-the insured dies;

-this policy matures; or

-the grace period ends without sufficient premiums being paid.

. . . . .

This policy's first premium is due on the policy date.

### Premiums After The First Premium

Any premium payments after the first premium may be made under a periodic plan or at any time while the policy is in effect.

. . . . .

### Grace Period

During the first five policy years, if (1) the surrender value on the day before a monthly anniversary date is not sufficient to cover the next monthly deduction, and (2) the continuation amount has not been paid, we will allow a 61–day grace period to pay premium sufficient to keep the policy in effect.

. . . . .

If sufficient premium is not paid by the end of the grace period, this policy will terminate without value. We will mail you notice of the sufficient premium.

. . . . .

### How We Determine Cash Value

To determine the cash value on a monthly anniversary day, we add (a), (b) and (c) and subtract (d); where

(a) is the cash value on the preceding monthly anniversary day; and

(b) is one month's interest on the cash value as of the preceding monthly anniversary day; and

(c) is (1) multiplied by (2), where:

 (1) is all premiums received since the preceding monthly anniversary day; and

 (2) is the net premium factor; and

(d) is the monthly deduction for the following month.

. . . . .

The cash value on the policy date is (1) the first premium, multiplied by (2) the Net Premium Factor, less (3) the monthly deduction for the first policy month.

*Interest.* The guaranteed interest rate on cash value is .32737% compounded

monthly. This equals a rate of 4% compounded yearly....

. . . . .

**Monthly Deduction.**

The monthly deduction is a charge made against the cash value each policy month. It is determined by adding the cost of insurance, the cost of additional benefits provided by rider, and the Monthly Policy Charge.

. . . . .

**Continuation of Coverage**

If periodic premium payments are not made as planned, this policy and any riders will remain in effect as long as the cash value less the surrender charge and less any policy debt covers the monthly deduction.

. . . . .

**Annual Statement**

On each policy anniversary, we will send you an annual statement. The statement will show the amount of insurance, the cash value, the surrender value, interest earned and policy debt. The statement will also show premiums paid and charges made during the policy year.

(All emphasis in original).

*2. The district court did not err in refusing to convert the motion*

 Rule 12(b) of the Federal Rules of Civil Procedure provides that if "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Under certain circumstances, however, a document that is not formally incorporated by reference or attached to a complaint may still be considered part of the pleadings. *See* 11 James Wm. Moore et al., Moore's Federal Practice § 56.30[4] (3d ed.1998). This occurs when "a document

is referred to in the complaint and is central to the plaintiff's claim...." *Id.* In such event, "the defendant may submit an authentic copy to the court to be considered on a motion to dismiss, and the court's consideration of the document does not require conversion of the motion to one for summary judgment." *Id.; see, e.g., Weiner v. Klais & Co.,* 108 F.3d 86, 89 (6th Cir.1997) (considering pension plan documents that defendant attached to the motion to dismiss part of the pleadings because the documents were referred to in the complaint and were central to plaintiff's claim for benefits under the plan).

In the present case, Greenberg's and Rossmann's insurance policies that were attached to Life of Virginia's motion to dismiss are not "matters outside the pleadings." First, the insurance policies are referred to throughout the complaint. Second, the policies are central to the sisters' claims. Each of their six causes of action relates to and arises from the two life insurance policies in question. The district court's consideration of the policies, therefore, did not require conversion of Life of Virginia's motion to dismiss into a motion for summary judgment. *See Weiner,* 108 F.3d at 89.

On the other hand, Life of Virginia's attachment of the illustration that agent Klein allegedly presented to Greenberg and Rossmann is a "matter[ ] outside the pleadings." But the district court did not consider the illustration in making its Rule 12(b)(6) decision to dismiss the complaint, so no harm was done.

**B. The district court's dismissal of Greenberg and Rossmann's claims under Rule 12(b)(6)**

*1. Standard of review*

 A district court's dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure is reviewed *de novo. See Weiner v. Klais & Co.,* 108 F.3d 86, 88 (6th Cir.1997). All well-pled allegations of the complaint are taken as

true. *See id.* "A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Id.* In sum, we conduct essentially the same analysis as the district court in that "we take the plaintiff's factual allegations as true and if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claims that would entitle it to relief, then ... dismissal is proper." *Id.* (internal quotation marks omitted) (ellipses in original).

### 2. Fraud

■ In order to prove common law fraud in Ohio, a plaintiff must show (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) that is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with reckless disregard for its truth or falsity, (4) upon which the plaintiff justifiably relied, and (5) a resulting injury proximately caused by the reliance. *See Burr v. Board of County Comm'rs. of Stark County*, 23 Ohio St.3d 69, 491 N.E.2d 1101, 1102 (1986).

■ Greenberg and Rossmann allege two theories of fraudulent behavior. The first involves a deceptive insurance sales practice known as "churning." Under the churning theory, the sisters claim that they were fraudulently induced to surrender their paid-up existing policies to purchase replacement insurance policies issued by Life of Virginia without being informed of the true costs of the transaction. According to Greenberg and Rossmann, the "costs of the transaction include the following: a large commission to the selling agent, a series of front-loaded charges and fees, new risks such as suicide exclusion clause, new contestability periods, and more expensive insurance due to higher insurable age."

Their second theory of fraud involves the sale of "vanishing-premium" policies or "single-premium" policies. Under this second theory, Greenberg and Rossmann contend that Life of Virginia's agent, using misleading policy illustrations, falsely represented to them that no further premium payments would be required for their policies beyond the single initial premium payment, and that their policies would remain in force for the life of the insured.

The alleged misrepresentation apparently stems from the fact that Life of Virginia's sales projections incorporated a presumed interest rate of at least 11%, whereas the policy's guaranteed interest rate on cash value is only 4%. Although 11% rates of return were attainable in the high-inflation atmosphere of the early 1980s, they have dropped dramatically in recent years. Greenberg and Rossmann contend that they were neither advised that a drop in interest rates would adversely affect the "single-premium" nature of their new policies nor were they shown the policy illustration that Life of Virginia attached to its motion to dismiss. Furthermore, the policy illustration in question shows that, even at an 11% interest rate, the policies would lapse prior to maturity. Any material questions of fact raised by the illustration, however, must be resolved on remand at the summary judgment phase or at trial.

Under both theories of fraudulent behavior, the sisters allege that Life of Virginia knew, but failed to disclose, that the sales presentations being made by its agents were false. They further contend that in reliance upon the agent's false representations of material facts, they surrendered their existing life insurance policies to purchase new Life of Virginia "single-payment" policies. Finally, they claim that they did not discover until 1996 that substantial additional premium payments would be required to keep their policies in force.

Even though Greenberg and Rossmann's allegations in their complaint appear to state a claim for fraud under Ohio law, the district court concluded otherwise. It did so on the basis of the boilerplate

language in the Life of Virginia insurance policies that were issued to the sisters. The district court found that Greenberg and Rossmann sufficiently alleged that agent Klein made material representations about the single-premium status of the policies, and that Klein "acted with knowledge of the falsity of his representations that no further payments would be required or with such utter disrespect and recklessness as to whether it was true that knowledge may be inferred." This analysis is supported by substantial evidence in the record. But the district court agreed with Life of Virginia that the sisters could not show "justifiable reliance" as a matter of law.

■ As correctly stated by the district court, Ohio law holds that a purchaser's reliance on a seller's fraudulent misrepresentation may be justified if the representation does not appear unreasonable on its face and if the purchaser has no apparent reason to doubt its veracity. *See, e.g., Lepera v. Fuson,* 83 Ohio App.3d 17, 613 N.E.2d 1060, 1065 (1992). After considering the multiple excerpts from the insurance policies that refer to possible future premiums being due after the initial premium is paid, the district court found "inescapable the conclusion that [Greenberg and Rossmann] had ample reason to question the veracity of the alleged representations of Klein." Specifically, the district court concluded that, as a matter of law, the sisters "could not have justifiably relied upon the alleged representations of agent Klein in the face of language informing them that their policies might expire if no additional payments were made."

We disagree with the district court's conclusion for two reasons. First, Life of Virginia defined the term "policy" to include the application form. This form is thus part of the insurance contract, a fact not contested by either side. On both forms, as noted in Part II.A.1. above, there is evidence supporting Greenberg and Rossmann's contention that the policies were "single-premium" policies. In addi-

tion, the policy data information sheet provided on page three of both policies states under the heading of "premiums payable" that the policies are "single payment."

At oral argument, Life of Virginia claimed that the term "single" in the phrases "single payment" and "single premium" cannot be interpreted to mean that Greenberg and Rossmann would not be required to make additional premium payments. But the dictionary includes among the definitions for the term "single" the words "only," "sole," and "consisting of only one in number." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2123 (3d ed.1986). Furthermore, the phrase "single premium" is defined as "the sum that would meet in a single payment the cost of a life insurance policy for the entire policy term." *Id.* at 2124.

The policy language upon which the district court relied, on the other hand, was taken from the boilerplate language of the contract rather than from the information relating specifically to Greenberg and Rossmann that was on the application form and the policy data information sheet. In response, the sisters claimed that they did not believe that all of the boilerplate language applied to their contracts. Given the internal inconsistencies in the policy language and the evidence of single-premium status, we conclude that Greenberg and Rossmann have sufficiently alleged justifiable reliance.

■ Second, "[t]he question of justifiable reliance is one of fact and requires an inquiry into the relationship between the parties." *Lepera,* 613 N.E.2d at 1065. Yet the district court undertook to resolve this issue as a matter of law by concluding that certain language in the boilerplate portion of the policies trumps the more individualized language on the application forms and policy data information sheets. The appropriate analysis, however, requires asking the less demanding question of whether, taking all of the well-pled allegations as true, the sisters can prove any

set of facts in support of their claim that would entitle them to relief. *See Weiner*, 108 F.3d at 88. We find that Greenberg and Rossmann's allegations of justifiable reliance are sufficient to survive a motion to dismiss.

The final element of fraud under Ohio law is "a resulting injury proximately caused by the reliance." *See Burr*, 491 N.E.2d at 1105. Greenberg and Rossmann allege that in reliance on agent Klein's representations, they cashed in their existing policies and purchased the two Life of Virginia policies. They further claim that it was not until 1996 that they first learned that substantial additional premiums would be required in order to keep their policies in force. We find that they have sufficiently alleged injury under Ohio law to maintain an action for fraud.

For all of the reasons set forth above, we conclude that Greenberg and Rossmann have stated a claim for fraud upon which relief can be granted under Ohio law.

### 3. Negligent misrepresentation

■■■■ Greenberg and Rossmann's negligent misrepresentation claim is based upon the same alleged false information that formed the basis of their fraud claim. The elements of a claim for negligent misrepresentation are as follows:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*R.J. Wildner Contracting Co. v. Ohio Turnpike Comm'n*, 913 F.Supp. 1031, 1040 (N.D.Ohio 1996) (quoting *Delman v. City of Cleveland Heights*, 41 Ohio St.3d 1, 534 N.E.2d 835, 838 (1989)).

The district court dismissed this claim because of its finding that Greenberg and Rossmann could not establish justifiable reliance as a matter of law. As discussed in Part II.B.2. above, we find that Greenberg and Rossmann sufficiently pled that they justifiably relied upon the allegedly false information that they received. The well-pled facts supporting their fraud claim are thus sufficient to support a claim of negligent misrepresentation.

### 4. Negligent training and supervision

■■■ Greenberg and Rossmann allege that Life of Virginia "breached its duty to [them] by failing to use reasonable care to train Life of Virginia's agents and to supervise their sales practices." They thus contend that Life of Virginia should be held liable for the losses caused by their reliance upon agent Klein's misrepresentations.

■■■ The Ohio Supreme Court has set forth the following key requirement for a claim of negligent training and supervision:

> It is axiomatic that for the doctrine of *respondeat superior* to apply, an employee must be liable for a tort committed in the scope of his employment. Likewise, an underlying requirement in actions for negligent supervision and negligent training is that the employee is individually liable for a tort or guilty of a claimed wrong against a third person, who then seeks recovery against the employer.

*Strock v. Pressnell*, 38 Ohio St.3d 207, 527 N.E.2d 1235, 1244 (1988). Thus, in order to maintain an action against the employer, a third party must allege that one of the employees is individually liable for a tort.

In the present case, the district court dismissed Greenberg and Rossmann's claim for negligent training and supervision on the basis that they had failed to allege a tort against agent Klein that would survive the motion to dismiss. The

district court reasoned that although the sisters alleged the torts of fraud and negligent misrepresentation, they could prove no set of facts that would support their claims because of the absence of justifiable reliance. Without a viable tort claim against agent Klein, the negligent training and supervision claim necessarily failed.

As stated in Parts II.B.2. and II.B.3. above, however, we have concluded that Greenberg and Rossmann's claims for fraud and negligent misrepresentation are claims upon which relief can be granted. The district court's reasoning is therefore no longer valid. Greenberg and Rossmann have alleged sufficient facts regarding Life of Virginia's allegedly negligent training and supervision of agent Klein to survive the motion to dismiss. Accordingly, we conclude that the sisters have stated a claim for negligent training and hiring upon which relief can be granted.

### 5. Breach of contract

Greenberg and Rossmann allege that Life of Virginia, through agent Klein, offered guaranteed death benefits based on their father's mortality in exchange for the payment of a single-premium payment from each of them. They further allege that agent Klein convinced them to surrender their existing policies and pay a lump sum for the new policies. Greenberg and Rossmann did exactly that, and received what they believed were single-premium policies. They believed this not only because of the representations that Klein had made, but also because of the language on the application forms and on the policy data information sheets that indicated the single-premium nature of the Life of Virginia policies. The sisters accepted Life of Virginia's offer for single-premium insurance policies, and they paid their single premium with the cash values obtained from the surrender of their existing policies. They thus allege that Life of Virginia breached the parties' agreement by later requiring the payment of additional premiums to maintain coverage.

Life of Virginia argues that the "integration clause" of the parties' contract precludes Greenberg and Rossmann as a matter of law from asserting a claim based upon agent Klein's alleged oral representations and any policy illustrations that he provided them. Both policies contain the following integration clause:

> The policy is a legal contract. It is the entire contract between you and us. An agent cannot change this contract. Any change to it must be in writing and approved by us. Only our President or one of our Vice–Presidents can give our approval. READ YOUR POLICY CAREFULLY.

Based on the integration clause, the district court agreed with Life of Virginia's argument that Greenberg and Rossmann were precluded as a matter of law from maintaining a cause of action for breach of contract. In reaching this conclusion, the district court relied upon the following language from this court:

> We went on to explain that under Ohio law an integration clause must be given effect despite alleged earlier oral representations. We noted that the purpose of such a clause is to prevent either party from relying upon representations made prior to the execution of the agreement that were not included in the agreement. To allow evidence of promissory fraud in the face of a written integrated contract "would completely defeat the purpose of an integration clause."

*Lewelling v. Farmers Ins. of Columbus, Inc.,* 879 F.2d 212, 217 (6th Cir.1989) (discussing its holding from *Coal Resources, Inc. v. Gulf & Western Indus.,* 756 F.2d 443, 446–47 (6th Cir.1985)).

The district court's analysis, however, overlooks a key fact. Although it correctly summarized this court's position with regard to the superceding effect of an integration clause over earlier oral representations, it failed to consider the language in the application forms and the policy data

information sheets. According to Life of Virginia's own definition of the word "policy," which is located directly above the integration clause, it includes "the attached application, any riders and endorsements." The language contained in the application forms and the policy data information sheets is therefore a part of the fully integrated insurance contracts. As previously set out in Part II.A.1. above, both of these documents indicate the single-premium nature of the policies in question.

If the notations on the application forms and Life of Virginia's categorizing the premiums as "single payment" on the policy data information sheets do not conclusively establish that Greenberg and Rossmann each entered into a contract for a single-premium policy, they at a minimum demonstrate inconsistencies existing within the overall insurance contract. Specifically, the application forms by themselves contain inconsistencies, and further inconsistencies exist when one compares the boilerplate language indicating the possibility of future premiums to the application forms and the policy data information sheets that do not.

■ The Ohio Supreme Court has stated that when ambiguities exist in a contract, the court "should construe [the contract] most favorably to the one who had nothing to do with the preparation of the printed form of contract, and most strongly against that party to the contract who prepared the same...." *Farmers' Nat'l Bank v. Delaware Ins. Co.*, 83 Ohio St. 309, 94 N.E. 834, 839 (1911) (construing an insurance contract in favor of the bank and against the insurance company that drafted it). Ohio law also holds that when there exists a conflict between specific information and general boilerplate language in a contract, precedence must be given to the specific information or language. *See Loblaw, Inc. v. Warren Plaza, Inc.*, 163 Ohio St. 581, 127 N.E.2d 754, 759 (1955).

Given these general rules of contract construction, we find that the district court erred in ruling as a matter of law that the

contracts were not in fact single-premium-payment policies. Because Life of Virginia demanded further premium payments in order to keep the policies in force, Greenberg and Rossmann have stated a claim for breach of contract upon which relief can be granted. To hold otherwise would require resolving factual disputes in favor of Life of Virginia, a practice that should play no part in ruling on a Rule 12(b)(6) motion to dismiss.

### 6. Breach of the duty of good faith and fair dealing

■ Greenberg and Rossmann contend that "[e]very contract imposes on each party the duty of good faith and fair dealing." They allege that "Life of Virginia was obligated to exercise good faith in performing its contracts with [them] so as not to deny them the bargained-for benefits of their contracts with Life of Virginia." Life of Virginia allegedly breached this duty "by engaging in a dishonest and deceitful course of conduct."

Life of Virginia counters that Ohio has not recognized a claim for breach of the duty of good faith and fair dealing under these circumstances. But the Ohio Supreme Court has held that "an insurer has a duty to act in good faith in the settlement of a third-party claim" and that "an insurer has the duty to act in good faith in the handling and payment of the claims of its insured." *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 452 N.E.2d 1315, 1319 (1983); *see also Buckeye Union Ins. Co. v. State Farm Mutual Automobile Ins. Co.*, 1997 WL 180278, at *3–*7 (Ohio Ct. App. April 16, 1997) (acknowledging that Ohio recognizes the cause of action, although it granted summary judgment in favor of the insurer in the case before it).

As the district court stated, however, no Ohio court has directly addressed whether this duty applies in the context of a plaintiff who alleges that the insurance agent engaged in dishonest practices when selling the policies. But Greenberg and

Rossmann claim that the district court too narrowly construed this count of their complaint. They not only allege that the agent engaged in dishonest practices when selling the policies, but also claim that Life of Virginia failed to live up to its obligation to deliver to them the benefit of their bargain. Despite receiving what they believed to be single-premium policies, Greenberg and Rossmann allege that Life of Virginia sought to charge substantial additional premiums many years after the issuance of the insurance contracts. They assert their claim for breach of the duty of good faith and fair dealing because they did not receive the benefits that they reasonably believed would flow from their policies. *See Buckeye Union,* 1997 WL 180278, at *7. ("[T]he duty functions to ensure that the insurer's conduct does not impair the insured's right to receive the benefits that the insured reasonably might have expected to flow from their contractual relationship.").

The district court based its dismissal of this cause of action on the ground that Greenberg and Rossmann did not identify "a single decision in which a court applying Ohio law has recognized a claim for breach of the duty of good faith and fair dealing when a plaintiff has alleged that an insurer or its agent was dishonest and deceitful in selling an insurance policy." We disagree with the district court's analysis for two reasons. First, the district court did not analyze Greenberg and Rossmann's theory that Life of Virginia breached the duty of good faith and fair dealing by withholding the benefits that the sisters expected would flow from the contracts. Second, the lack of a published Ohio opinion does not automatically preclude Greenberg and Rossmann from establishing a basis in law for their claim. *See Bailey v. V. & O Press Co., Inc.,* 770 F.2d 601, 604 (6th Cir.1985) (explaining that in diversity cases the federal court must apply the law of the state's highest court and, when the state's highest court has not spoken on an issue, "the federal court must ascertain from all available data what the state law is and apply it").

The sisters rely upon the unpublished opinion of the Ohio Court of Appeals in *Buckeye Union,* 1997 WL 180278, where the court stated as follows:

> The law imposes upon an insurer a duty of good faith and fair dealing in attending to the claims of its insured or to the claims of a third party against its insured. *Hoskins v. Aetna Life Ins. Co.,* [6 Ohio St.3d 272, 452 N.E.2d 1315 (1983);] *Hart v. Republic Mut. Ins. Co.,* [152 Ohio St. 185, 87 N.E.2d 347 (1949)]. An insurer's breach of this duty gives rise to a cause of action in tort, irrespective of any liability that might arise from a breach of the underlying insurance contract. *Staff Builders, Inc. v. Armstrong,* [37 Ohio St.3d 298, 525 N.E.2d 783 (1988)].
>
> . . . . .
>
> The duty operates to ensure that the insurer's performance or its refusal to perform under the insurance contract does not impair the insured's right to receive the benefits that the insured reasonably might have expected to flow from the contract or from the contractual relationship. *See, e.g., McMillin Scripps North Partnership v. Royal Ins. Co.,* [19 Cal.App.4th 1215, 23 Cal.Rptr.2d 243 (1993)] (declaring that the duty "supplements" express contractual provisions to prevent conduct that, while not technically a breach of express contractual provisions, frustrates the other party in securing his rights to the benefits of the contract); *Rawlings v. Apodaca,* [151 Ariz. 149, 726 P.2d 565 (1986)] (holding that an insurer breaches the duty by conduct that destroys the security for which the insured bargained or that exposes the insured to a risk from which the insured sought protection).

*Id.* at *3, *5. Although not binding, the above language provides a reasonable basis for concluding that Ohio law would recognize Greenberg and Rossmann's claim that Life of Virginia breached its

duty of good faith and fair dealing when it sought to charge substantial additional premium payments despite the alleged single-premium status of the contracts. With there being no indication that Ohio law would bar such a claim, and given *Buckeye Union*'s emphasis on the broad nature of this duty, we find that the district court erred when it concluded that Greenberg and Rossmann had failed to state a claim upon which relief could be granted.

### 7. *Breach of fiduciary duty*

■ Finally, the sisters allege that they "relied upon Life of Virginia and its agents to deal with them in a fair and accurate manner with full disclosure of all pertinent factors relating to ... financial transactions." They further contend that Life of Virginia "had a duty to provide complete and truthful information to [them] when inducing them to purchase the life insurance policies...." Based upon Life of Virginia's alleged failures to provide full and accurate information, coupled with the alleged misrepresentations made by its agent, the sisters claim that Life of Virginia breached its fiduciary duty to them.

■ Under Ohio law, fiduciary duties can arise either by law or by the operation of the relationship between the parties. *See Stone v. Davis,* 66 Ohio St.2d 74, 419 N.E.2d 1094, 1098 (1981) ("[A] fiduciary relationship need not be created by contract; it may arise out of an informal relationship where both parties understand that a special trust or confidence has been reposed."). As the district court recognized, Greenberg and Rossmann do not allege that the fiduciary relationship stems from their agreements with Life of Virginia, but rather from the operation of a special relationship between the parties.

In *Stone,* the Ohio Supreme Court explained that a fiduciary duty may arise from an informal relationship when "there is a ... position of superiority or influence, acquired by virtue of [a] special trust." *Id.* According to the district court, Green-

berg and Rossmann "did not allege[ ] that their relationship with Defendant or its agent was one in which Defendant occupied a position of superiority or influence acquired by virtue of special trust reposed in Defendant by Plaintiffs." The district court concluded as a matter of law that the parties' transaction was a typical arm's-length relationship that did not involve fiduciary duties.

Specifically, Greenberg and Rossmann allege in their complaint that Life of Virginia

trains and encourages its agents to develop close, confidential relationships with their customers. Pursuant to this training, Life of Virginia's agents encourage customers, including Plaintiffs and Class Members, to reveal personal and confidential information to the agents, and to rely upon the agents for financial advice, investment advice, estate planning and counseling based on their knowledge and expertise concerning Life of Virginia's sophisticated and complex financial products.

They further claim that they

did not have the information, ability or expertise to fully and professionally evaluate the financial transactions that they were induced to enter into by Life of Virginia and its agents ... [They] did not have the ability to analyze or test Life of Virginia's sales illustrations and the reasonableness of the assumptions which were used to make the projections of the cost of the life insurance policies as shown in those sales illustrations.

Despite Greenberg and Rossmann's assertions that Life and Virginia and its agents possessed superior knowledge upon which they were forced to rely, their allegations fail to demonstrate the existence of a special relationship of trust. *See Stone,* 419 N.E.2d at 1098. Rather, the relationship possesses the qualities of a typical arm's-length transaction, in which the seller often possesses more expertise on the item to be sold and the buyer typically

relies on the seller's representations. But this is insufficient in and of itself to establish a special relationship of trust. *See Ed Schory & Sons, Inc. v. Society Nat'l Bank,* 75 Ohio St.3d 433, 662 N.E.2d 1074, 1082 (1996) (holding that a fiduciary relationship did not exist where the creditor dealt with the debtor in a commercial context in which the parties were dealing at arm's length, each protecting its own interest). To hold otherwise would impose fiduciary obligations on the seller of goods or services in the vast multitude of ordinary arm's-length transactions simply on the basis that the seller possessed superior knowledge of the product being sold.

We conclude that the district court correctly found that the parties had engaged in an arm's-length transaction as a matter of law. Even taking the well-pled facts as true, the sisters' cause of action for breach of fiduciary duty fails to state a claim upon which relief can be granted.

### C. Second amended complaint

#### 1. *Standard of review*

 Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend a pleading should be "freely given when justice so requires." The purpose of Rule 15(a) is "to reinforce the principle that cases 'should be tried on their merits rather than the technicalities of pleadings.'" *Moore v. City of Paducah,* 790 F.2d 557, 559 (6th Cir.1986) (quoting *Tefft v. Seward,* 689 F.2d 637, 639 (6th Cir.1982)). A district court has discretion in determining whether justice requires that the amendment be allowed. *See Moore,* 790 F.2d at 559. On appeal, we generally review a district court's denial of a motion to amend for abuse of discretion. *See id.* When the district court bases its decision on a legal conclusion that the proposed amendment would not survive a motion to dismiss, however, we review the decision *de novo. See LRL Properties v. Portage Metro Housing Auth.,* 55 F.3d 1097, 1104 (6th Cir.1995).

#### 2. *The district court erred when it denied the motion to amend*

After dismissing the first amended complaint upon substantive grounds, the district court proceeded to consider Greenberg and Rossmann's motion to file a second amended complaint. The district court denied the motion on the basis that such a filing would be futile, concluding that none of the proposed amendments would cure the defects present in the first amended complaint.

 Without changing the substance of the six causes of action, the proposed second amended complaint primarily alters the language of the sisters' "vanishing-premium" theory to a "single-premium" theory. The term "single premium" more accurately describes the character of Greenberg and Rossmann's alleged purchase. They have maintained throughout this action that they entered into life insurance contracts with Life of Virginia that required them to pay only a single premium. Their second amended complaint simply attempted to articulate this theory with greater clarity.

Because we are reversing the district court's blanket dismissal of all of Greenberg and Rossmann's causes of action as listed in their first amended complaint, the district court's conclusion that the second amended complaint would be futile can no longer stand. The district court should therefore reconsider the sisters' motion to amend in light of our conclusion that the first amended complaint states claims upon which relief can be granted, and in light of Rule 15(a)'s provision that leave should be "freely given when justice so requires." *See Moore,* 790 F.2d at 559.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** in part and **REVERSE** in part the district court's decision. Greenberg and Rossmann's breach of fiduciary duty claim is **DISMISSED**. All of the

remaining causes of action are **REIN-STATED** and the case is **REMANDED** for further proceedings consistent with this opinion.