**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0429n.06
Filed: June 20, 2007

**No. 06-4439**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| JOHN A. BLESSING, et al., | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiffs-Appellants, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| v. | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| UNITED STEEL, PAPER AND FORESTRY, | ) | |
| RUBBER, MANUFACTURING, ENERGY, | ) | MEMORANDUM |
| ALLIED INDUSTRIAL AND SERVICE | ) | OPINION |
| WORKERS INTERNATIONAL UNION; and | ) | |
| KELSEY-HAYES COMPANY, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE: COLE and McKEAGUE, Circuit Judges; and COHN, District Judge.*

**McKEAGUE, Circuit Judge.** John A. Blessing and 58 other named plaintiffs in this action are former employees of defendant Kelsey-Hayes Company and members of defendant United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union ("United Steel Workers" or "USW"). In this action they challenge the unilateral decision of Kelsey-Hayes to close the manufacturing plant where they worked in Fremont, Ohio. They allege the decision is a breach of the collective bargaining agreement or, alternatively, is barred by promissory estoppel. Plaintiffs also proceed against their union, alleging USW has breached its

* Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

duty of fair representation by failing to substantively challenge Kelsey-Hayes' decision. Finally, they allege both defendants engaged in a civil conspiracy.

The district court granted the defendants' motions to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a valid claim. The district court concluded that Kelsey-Hayes was within its rights under the terms of the collective bargaining agreement to unilaterally close the plant and that, therefore, USW's decision not to challenge the closing was not irrational and was not in breach of its duty of fair representation. The court essentially concluded that enforcement of the plain language of the collective bargaining agreement precluded plaintiffs' promissory estoppel and civil conspiracy claims.

On appeal, plaintiffs insist that they have stated facially valid claims, that dismissal under Rule 12(b)(6) is premature, and that they deserve the chance to prove their claims. As we find no error in the district court's judgment of dismissal, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This action grows out of Kelsey-Hayes' decision to close its Kingsway automotive components manufacturing plant in Fremont, Ohio. Kelsey-Hayes announced its decision on April 7, 2005, to be effective no later than December 2006. Believing that Kelsey-Hayes' unilateral decision was in contravention of the unique, collaborative labor-management partnership reflected in the governing collective bargaining agreement ("CBA"), some employees filed grievances through their union, United Steel Workers. The union pursued the grievances through the pre-arbitration steps of the grievance process. However, when the grievances were denied, the union declined to

pursue arbitration for the reason that the grievances lacked merit. The union concluded that Kelsey-Hayes was entitled, under the plain language of the CBA, to unilaterally decide to close the plant.

Plaintiff John A. Blessing, President of USW Local 1915, and 58 fellow employees were not satisfied. On May 23, 2006, they instituted this action against Kelsey-Hayes and USW, filing their complaint in the Sandusky County Court of Common Pleas. Defendants removed the action to federal court on June 21, 2006. Removal was based on federal question jurisdiction, 28 U.S.C. § 1331, as the complaint contains a hybrid action under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, against USW for breach of its duty of fair representation and against Kelsey-Hayes for breach of the CBA. The complaint contains seven counts, four of which are relevant to this appeal. All four are premised on a Memorandum of Agreement ("MOA") that is incorporated into the governing 2002 CBA as Appendix D. The MOA originated as a result of 1996 negotiations between Kelsey-Hayes and USW, when, for the purpose of restoring the Kingsway plant to competitiveness, they agreed to a "unique and unprecedented collective bargaining partnership." MOA p. 202, JA 202. The agreement emphasized the virtues of "teamwork, mutual trust and respect." *Id*. at 203, JA 202. The agreement created a "flexible contract" arrangement, which defined each party's particular areas of responsibility. The union, through its "Operations Team," was permitted to "deal with the day-to-day shop floor issues in terms of job duties, training, work hours, overtime, movement of people, rates of pay and other conditions which may affect productivity and efficiency." *Id*. at 204, JA 203. The company, on the other hand, retained responsibility "for all personnel issues such as hiring, discipline and staffing, . . . and all other rights

and authorities contained in the 1993 collective bargaining agreement not specifically amended by this agreement." *Id*. at 205, JA 203.

Among these other rights retained by the company and not amended by the MOA were "Management Rights":

> It is recognized that the Management of the Company and the business; the direction of its working forces; the planning, directing and control of the plant operations; the employment, control and direction of the help; the hiring, promoting, demoting, transferring, suspending and discharge for proper cause of employees; laying-off for lack of work or other legitimate reasons, and the right to change methods or facilities; is vested exclusively in the Company. Provided that there shall be no discrimination against any employee because of Union membership and provided further that this article "does not conflict with other provisions of this Agreement."

2002 CBA p.3, JA 102. That these "management rights" included the company's right to unilaterally decide to close the plant is evidenced by language in the Severance Plan provisions of the 2002 CBA, referring to a decision "in the sole judgment of the Company" to permanently close the Kingsway plant. *Id*. at 87, JA 144.

Recognizing each party's exclusive prerogative to act within its own particular area of responsibility, and underscoring the parties' mutual commitment to co-operate, the MOA further expressly provided that "[t]here shall be no claim, demand or lawsuit brought against the Company and/or the Union based on actions, conduct or decisions of the Parties, when acting in their capacity under this Appendix D." *Id*.

Notwithstanding the language of the MOA and other provisions of the CBA, plaintiffs maintain that implementation of the MOA gave rise to a collaborative relationship, a sort of "joint venture," pursuant to which Kelsey-Hayes effectively waived its right to enforce its traditional right

to unilaterally close the plant. Plaintiffs also allege this waiver was communicated by representatives of Kelsey-Hayes who, through material misrepresentations, led plaintiffs to believe that they would have a say in whether the Kingsway plant remained open. Plaintiffs' complaint alleges that, because of the opportunity afforded them by the MOA to participate in the running of the plant as a partner with the company, and in reliance on the misrepresentations, they made favorable concessions to the company. Because they detrimentally relied, plaintiffs contend Kelsey-Hayes should be deemed to have been estopped to deny them a role in the decision to close the plant. By failing to zealously advocate for them, plaintiffs maintain that USW breached its duty of fair representation and entered into a conspiracy with Kelsey-Hayes to deny plaintiffs their rights.

In deciding Kelsey-Hayes' and USW's motions to dismiss plaintiffs' claims, the district court concluded that the alleged claims were undercut as a matter of law by the plain language of the MOA and CBA. As to the count II claim against Kelsey-Hayes for breach of the CBA, the court held:

> The plain language of the MoA, however, did not establish a joint venture between USW and Kelsey-Hayes to run the plant. The MoA gave control of daily operational decisions concerning the plant to USW, but at all times Kelsey-Hayes retained, as noted, the sole right to close the plant. The right was clearly established in the 2002 CBA; nothing in the MoA either explicitly or implicitly waived the "sole judgment" provision of the bargained agreement.

Opinion p. 4, JA 409. "Because the union had no role to play in closing the plant," the court further held, as to the count I claim against USW, that the union "did not, indeed it could not, breach a duty of fair representation by not preventing the closing." *Id*. at 3, JA 408. The count IV promissory estoppel claim was also held to be fatally flawed because it is based on alleged oral promises directly at odds with the plain and unambiguous terms of the CBA. *Id*. at 4, JA 409. And plaintiffs' count

VII civil conspiracy claim was dismissed for lack of an essential allegation that defendants had engaged in any unlawful actions. *Id*. at 5, JA 410. In other words, the rationale for the district court's ruling that the complaint failed to state a valid claim stemmed entirely from the language of the collective bargaining agreement cited in the complaint as the foundation for plaintiffs' claims.

## II. ANALYSIS

### A. Standard of Review

Whether the district court properly dismissed plaintiffs' claims under Rule 12(b)(6) is a question of law subject to *de novo* review. *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006). The court must construe the complaint in the light most favorable to plaintiffs, accept all well-pled factual allegations as true and determine whether plaintiffs undoubtedly can prove no set of facts in support of their claims that would entitle them to relief. *Id*. Though decidedly liberal, this standard does require more than bare assertions of legal conclusions. *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001). Conclusory allegations and legal conclusions masquerading as factual conclusions are not sufficient. *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). To state a valid claim, "a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *Id*.

### B. Breach of the Collective Bargaining Agreement

In this hybrid action under § 301 of the LMRA, plaintiffs' claim against Kelsey-Hayes for breach of the CBA and claim against USW for breach of its duty of fair representation are "inextricably interdependent." *Garrison v. Cassens Transport Co.*, 334 F.3d 528, 538 (6th Cir.

2003). In order to state a valid claim against *either* the company or the union, plaintiffs must state a valid claim against both defendants.

Plaintiffs' count II claim that Kelsey-Hayes breached the CBA hinges on the theory that the CBA means more than what it says. By incorporating the Appendix D MOA into the CBA, Kelsey-Hayes and USW are said to have created a *de facto* joint venture, pursuant to which Kelsey-Hayes waived its right, in its sole judgment, to close the plant. Because they have alleged this waiver theory, and because the allegations of the complaint must be read in the light most favorable to plaintiffs, plaintiffs argue the district court erred by holding they failed to state a valid claim for breach of the CBA.

Yet, plaintiffs' conclusory allegation of waiver is clearly insufficient. In fact, the allegation does not appear anywhere in the complaint except in relation to their count IV promissory estoppel claim. Complaint ¶¶ 56-57, JA 40-41. In that context, plaintiffs affirmatively allege that Kelsey-Hayes did *not* intend to waive its right to unilaterally decide whether to close the plant. Rather, Kelsey-Hayes is alleged to have, through representations of material facts, *misled* plaintiffs into believing it was waiving or relinquishing such right. As such, this waiver allegation, even when read in the light most favorable to plaintiffs, actually belies the notion that the Kelsey-Hayes and USW reached a meeting of the minds on the creation of a joint venture through which Kelsey-Hayes waived its express right to unilaterally decide whether and when to close the Kingsway plant. Plaintiffs' own count IV waiver allegation thus contradicts the waiver argument they now assert in support of their count II claim for breach of the CBA.

Moreover, it is equally clear that the allegations of the complaint, even if accepted as true, fail to make out the essential elements of the now-argued-for joint venture. Under Ohio law, a joint venture is a partnership established for the purposes of a single business enterprise. *Anchor v. O'Toole*, 94 F.3d 1014, 1024 (6th Cir. 1996). The essential elements of a partnership are as follows:

1. an express or implied partnership contract between the parties;
2. the sharing of profits and losses;
3. mutuality of agency;
4. mutuality of control; and
5. the co-ownership of the business and of the property used for partnership purposes or acquired with partnership funds.

*Id.* The essential elements of a joint venture partnership are similar:

1. a joint contract;
2. an intention to associate as joint venturers;
3. community of interest and control, including contributions to the joint venture;
4. the mutual right to direct and control the purpose of the joint venture; and
5. an agreement for the division of profits and losses – jointly, not severally.

*Id.*

Both the express allegations of plaintiffs' complaint and the terms of the MOA fail to meet several of the above essential elements.[1] Plaintiffs have neither alleged nor even argued that Kelsey-Hayes and USW agreed to jointly share profits and losses realized at the Kingsway plant. Nor have plaintiffs alleged or argued that Kelsey-Hayes and USW co-owned the Kingsway plant property. Nor

---

[1]Evaluation of the facial validity of plaintiffs' claims is based on the pleadings. The MOA is attached to the complaint and is properly considered part of the complaint. The 2002 CBA, into which the MOA is incorporated, is not attached to the complaint, but it is referred to in the complaint. The terms of the CBA are not disputed and are central to plaintiffs' claims. The CBA is therefore properly considered part of the pleadings as well. *See Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999).

have they alleged or argued that Kelsey-Hayes and USW enjoyed a community or mutuality of control of the business. In fact, the MOA, on which plaintiffs' claim depends, defines separate and distinct capacities or areas of responsibility and control for each party to the CBA. Yes, the MOA contains terms and phrases like "partnership," "mutual trust," "avoiding confrontational tactics," "labor and management must work together," and "sharing the same common goals." MOA pp. 202-03, JA 203. However, the defined collaborative scheme expressly contemplated that USW would be accorded control over employees' day-to-day working conditions, while Kelsey-Hayes would retain control over certain traditional management functions like hiring and staffing determinations, as well as decisions regarding use and even closure of facilities. CBA pp. 3, 87, 204-05; JA 102, 144, 203.

Plaintiffs attempt to fill in the gaps by relying on a July 11, 2006 letter written by John Blessing to USW Staff Representative Randy McComas. JA 321. The attempt is improper and unavailing. The letter, dated some six weeks after plaintiffs had commenced this action, is in the nature of a complaint about USW's failure to more vigorously pursue plaintiffs' grievances stemming from Kelsey-Hayes' announced plant closure plans. In it, Blessing urges USW to seek arbitration of the grievances, insisting that the MOA, viewed in light of Kelsey-Hayes' representations, gave rise to a sort of *de facto* partnership. Even assuming the letter could be considered part of the pleadings for purposes of deciding the Rule 12(b)(6) motions to dismiss, it does not represent an alleged *factual basis* for the breach of CBA claim or any other claim.[2] It is

---

[2]The letter, generated after the complaint was filed, clearly is not part of the pleadings. Insofar as it was presented to and not excluded by the district court, it could nonetheless have been

nothing but an argument, reduced to writing after the complaint had been filed, by the lead plaintiff, a layperson. It contains an articulate, impassioned summary of plaintiffs' theory of relief, but it hardly constitutes documentary evidence substantiating the existence of a joint venture partnership.

Accordingly, the district court did not err in ruling that plaintiffs' count II claim for breach of the CBA fails to state a valid claim. The CBA clearly conferred upon Kelsey-Hayes the right to unilaterally close the plant. Considering the essential elements of a joint venture partnership under Ohio law, the MOA language relied on by plaintiffs simply cannot reasonably be read as creating a joint venture whereby Kelsey-Hayes impliedly waived its right, in its sole judgment, to decide to close the plant.

### C. Breach of Duty of Fair Representation

It having thus become clear that the claim against Kelsey-Hayes for breach of the CBA is groundless, it necessarily follows that plaintiffs cannot proceed against USW for breach of its duty to fairly represent them. Because the claims are "inextricably interdependent," the invalidity of one claim automatically spells the invalidity of the other. *Garrison*, 334 F.3d at 538. Yet, viewing the claim against USW *independently* yields the same conclusion.

In order to make out a breach of the duty of fair representation, plaintiffs cannot rely merely on conclusory statements. *Williams v. Molpus*, 171 F.3d 360, 366 (6th Cir. 1999). They must allege specific facts in support of a finding "that the union's actions or omissions during the grievance

---

considered by the court if its filing and consideration were deemed to convert defendants' motions to dismiss into motions for summary judgment under Fed. R. Civ. P. 56. However, the district court appears not to have considered the letter in any way relevant to its ruling.

process were arbitrary, discriminatory, or in bad faith." *Garrison*, 334 F.3d at 538. Parroting this language in their complaint, plaintiffs baldly allege that "USW's lack of action has been arbitrary, discriminatory, and the result of bad faith." Complaint ¶ 39, JA 38. This is not enough. In arguing that this allegation is sufficient, plaintiffs do not contend on appeal, however, that USW acted discriminatorily or in bad faith. They contend only that USW, by failing to pursue arbitration, acted arbitrarily.

A union's decisions on whether and how to pursue an employee's grievance are entitled to deference. *Driver v. United States Postal Service, Inc.*, 328 F.3d 863, 869 (6th Cir. 2003). A union's decision not to pursue a grievance that it deems lacks merit, is not actionable as long its determination was made in good faith. *Williams*, 171 F.3d at 366-67. The union's actions are not to be considered arbitrary unless they are "so far outside a wide range of reasonableness as to be irrational." *Driver*, 328 F.3d at 869 (quoting *Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 67 (1991)). The requisite arbitrariness to sustain the claim is not made out by a showing of mere negligence, error, or flaw in judgment. *Garrison*, 334 F.3d at 538. To prevail, plaintiffs must show that the union's actions were "wholly irrational." *Id*. (quoting *O'Neill*, 499 U.S. at 78).

For the reasons set forth above, it is abundantly clear that USW's refusal to pursue arbitration of plaintiffs' grievances was not wholly irrational, but was well-justified. Considering the clear language of the CBA, plaintiffs' contention that Kelsey-Hayes was free to close its Kingsway plant only with USW members' consent is groundless, based on little more than wishful thinking. Plaintiffs simply have not alleged specific facts that would support a finding that Kelsey-Hayes' plant-closure decision was a breach of the CBA or that USW's failure to more vigorously protest the

closure was a breach of the duty of fair representation. It follows that the count I claim, too, was properly dismissed.

### D. Promissory Estoppel

Plaintiffs' count IV federal common law estoppel claim is based on unspecified material representations. Plaintiffs allege simply that Kelsey-Hayes made material representations that led plaintiffs to believe Kelsey-Hayes had waived or abandoned its right to unilaterally make the plant-closure decision. Complaint ¶ 56, JA 40. Plaintiffs further allege that the representations were falsely made in order to induce wage and benefit concessions from plaintiffs. *Id*. at ¶¶ 57-58, JA 40-41.

The district court recognized that the federal common law that has developed under the LMRA includes a claim for promissory estoppel. The elements of a such a claim are as follows:

1. conduct or language amounting to a representation of material facts;
2. the party to be estopped must be aware of the true facts;
3. the party to be estopped must intend that the representation be acted on or act such that the party asserting the estoppel has a right to believe it so intended;
4. the party asserting the estoppel must be unaware of the true facts; and
5. the party asserting the estoppel must detrimentally and justifiably rely on such representation.

*Anderson v. AT&T Corp.*, 147 F.3d 467, 477 (6th Cir. 1998) (quoting *Apponi v. Sunshine Biscuits, Inc.*, 809 F.2d 1210, 1217 (6th Cir. 1987)). The district court dismissed plaintiffs' claim as invalid because the representations on which plaintiffs allegedly relied were directly contrary to clear and unambiguous language of the CBA. In other words, the district court impliedly concluded, in the terms of the above promissory estoppel elements, that plaintiffs' alleged reliance could not possibly have been reasonable and justified.

The district court's assessment is plainly correct:

Once it is established, either by an admission of a party or by a judicial finding, that there is in fact an enforceable contract between the parties, and therefore consideration exists, then a party may no longer recover under the theory of promissory estoppel. Similarly, the remedy of promissory estoppel is not available when an unambiguous contract exists that covers the issue for which damages are sought. When a contract exists containing express language contrary to an alleged, prior promise, a party cannot make out the elements of a clear and unambiguous promise or reasonable reliance necessary to prove a promissory estoppel claim, as the specific disclaimer destroys the allegations in a plaintiff's complaint that an agreement was executed in reliance upon contrary oral representations.

28 Am. Jur. 2d *Estoppel & Waiver*, § 57 (2007) (footnotes and citations omitted) (cited in *Lynch v. Sease*, 2007 WL 1244270 (6th Cir. April 27, 2007) (unpublished).

Here, as explained above, the CBA clearly and unambiguously conferred upon Kelsey-Hayes the right to decide whether and when to close the Kingsway plant. Despite its allusions to shared goals and mutual trust, nothing in the MOA calls Kelsey-Hayes' retention of this unilateral right into question. Neither have plaintiffs specifically identified any clear and unambiguous oral promise that would even arguably justify reasonable reliance on the notion that Kelsey-Hayes had waived its management rights expressly reserved under the 2002 CBA. The promissory estoppel claim was therefore properly dismissed.

## E. Civil Conspiracy

In count VII, plaintiffs allege that defendants conspired to discriminate against them on the basis of age. In their appellate arguments, however, plaintiffs have abandoned this as well as other age-discrimination allegations in their complaint. For purposes of this appeal, their civil conspiracy

claim is essentially coextensive with their LMRA claims for breach of the CBA and breach of the duty of fair representation. By virtue of USW's failure to pursue plaintiffs' grievances in opposition to Kelsey-Hayes' plant-closure plans, defendants are alleged to have entered into a "tacit understanding" to accomplish the unlawful act.

There is no dispute concerning the elements of a civil conspiracy claim under Ohio law. A civil conspiracy is "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Fitzgerald v. Roadway Express, Inc.*, 262 F. Supp. 2d 849, 861 (N.D. Ohio 2003) (quoting *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St. 3d 415, 419 (1995)). A conspiracy cannot be made the subject of a civil action, however, unless there is an underlying unlawful act. *Id.*

Here, the underlying unlawful act is alleged to be the unilateral decision to close the Kingsway plant in violation of the CBA. It is therefore clear that dismissal of the civil conspiracy claim was proper for two reasons. First, the claim is preempted by the LMRA because it necessarily entails interpretation of the terms of the collective bargaining agreement and, in fact, is essentially duplicative of plaintiffs' hybrid § 301 claims. *See DeCoe v. General Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994). Second, if not preempted, the claim is fatally flawed because, as explained above, Kelsey-Hayes' decision to close the Kingsway plant was not an unlawful act at all, but was squarely within its contractual rights. USW's failure to more vigorously oppose the closure was, therefore, not even a breach of its duty of fair representation, much less participation in a "malicious

combination" to injure plaintiffs. Accordingly, the district court's dismissal of plaintiffs' count VII civil conspiracy claim was also proper.

### III. CONCLUSION

To the extent the Kingsway plant-closure implicates plaintiffs' legal rights, the rights necessarily emanate from the collective bargaining agreement between their union, United Steel Workers, and their employer, Kelsey-Hayes. Yet, all four claims asserted by plaintiffs that are the subject of this appeal are clearly defeated by the terms of that same collective bargaining agreement. As the collective bargaining agreement is properly considered part of the pleadings for purposes of review under Rule 12(b)(6), the district court properly concluded that none of plaintiffs' claims states a valid claim upon which relief can be granted. The district court's judgment of dismissal is therefore **AFFIRMED**.