GIBBONS, Circuit Judge,
concurring.
I agree that we must reverse the district court’s dismissal of the complaint and remand for further proceedings. And I agree that there may well be an issue on remand about whether the patch was a “combination product.” My additional reasons for reversal, however, are broader than a focus on that single issue and are more procedurally based.
Miller carefully crafted her complaint to make clear that it is the manner in which the patch delivers fentanyl that she alleges was defective and unreasonably dangerous in its design, manufacture, and marketing. Similar, it is the manner in which the patch delivers fentanyl that is the basis for the negligence and other claims. The district court did not focus on the complaint as pled, however, but instead focused on documents submitted by Mylan in support of its motion to dismiss. The district court justified its consideration of the documents by saying that Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007), authorizes the court, in ruling on a motion to dismiss, to consider letters from a federal agency and matters of public record whose authenticity cannot be questioned, when those documents are incorporated by reference into or are central to the claims set forth in plaintiffs complaint. The court secondarily relied on our opinion in Greenberg v. Life Insurance Co. of Virginia, 177 F.3d 507, 514 (6th Cir.1999), which found that documents attached to a motion to dismiss that are referred to in the complaint and central to the claim are deemed *679 to form part of the pleadings. The district court apparently determined that the documents were referenced in the complaint and central to the claim because the complaint “specifically refers to the warnings and labels that accompanied MFTS” and because neither party questioned their authenticity.
No documents were attached to plaintiffs complaint, and it did not mention any specific document or its contents. The documents submitted by Mylan included a letter from the Director of the Office of Generic Drugs in the Food and Drug Administration with the date of January 28, 2005, stamped on it, that approves the patch as “safe and effective for use as recommended in the submitted labeling;” a number of medication guides dealing with, among other things, appropriate use of MFTS and Duragesic; and some labeling materials. Mylan made no effort to authenticate the documents.
The documents considered by the district court appear quite different from the sorts of documents approved in Tellabs and Greenberg for use in connection with a motion to dismiss. The plaintiff does generally refer to labeling in her complaint. But no specific reference is made to the labeling of the patch used by plaintiffs decedent Kelly, and there is no indication that the labeling submitted by Mylan was labeling provided to Kelly or submitted to the FDA. Nor is there any indication that the medication guides were submitted to the FDA or that they would have been provided to the ultimate user of the product. The relevance, if any, of these documents to the complaint is unknown at this time. The letter from the Office of Generic Drugs does provide some support for Mylaris arguments that the FDA considered the entire patch to be a drug, as it refers to Mylaris “abbreviated new drug application” and refers to the patch as a “drug.” But it is not clear that the FDA was doing anything other than using a natural way of referring to the product since it was in fact approving a drug application. Clearly, this document is in no way referenced in the complaint, and it is not central to plaintiff’s claim. If anything, it seems central to the defense. It is precisely the sort of document on which defendant could properly rely in a motion for summary judgment, along with appropriate authentication supporting its admission. That motion would of course be made after plaintiff had an opportunity for discovery about all the exchanges between Mylan and the FDA with regard to the patch. Moreover, there is some question whether the letter should be considered at all in connection with a motion to dismiss, regardless of whether it is central to the plaintiffs claim. See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1197 (3d Cir.1993) (discussing whether written correspondence subject to FOIA requests are public records for purposes of a motion to dismiss and holding that they are not).
Rather than taking the complaint as it was, the district court and, in this court, the dissent immersed themselves in drawing conclusions from the documents and the relevant statutes. At a later point in this litigation, that might be appropriate. But from my perspective it is inappropriate to use the documents submitted by Mylan as if they were a part of plaintiffs pleadings. Submission of the additional materials should have likely triggered conversion of the motion to a motion for summary judgment, which would have required Mylan to provide some evidentiary basis for their admission and would have required the district court to permit presentation of all evidence pertinent to the motion.
*680 One may fairly question why this court should embark on a discussion of the procedural error when plaintiff did not brief it before the district court or this court. And certainly, we should generally avoid issues not raised by the parties. See generally Barney v. Holzer Clinic, Ltd., 110 F.3d 1207, 1213 (6th Cir.1997) (citing Hines v. United States, 971 F.2d 506, 508-09 (10th Cir.1992)). But this case presents one of those exceptions — it implicates an important nonjurisdietional concern that transcends the interests of the parties. See Hines, 971 F.2d at 508. Maintaining the integrity of the procedures contemplated by the Federal Rules of Civil Procedure is an important goal, one which is best advanced here by pointing out the irregularity.