NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0737n.06

No. 08-3577

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Nov 13, 2009
LEONARD GREEN, Clerk

ACADEMIC  IMAGING,  LLC,  NEWARK )
HEALTH IMAGING, LLC                          )
                                                           )
        Plaintiffs-Appellants,                 )
                                                           )
v.                                                         )        On  Appeal  from  the  United
                                                           )        States  District  Court  for  the
SOTERION  CORP.,  SOTERIA  IMAGING, )        Southern District of Ohio
SERVICES, INC.                                   )
                                                           )
        Defendants-Appellees.               )


 Before:        BOGGS, ROGERS, and WHITE, Circuit Judges.

                BOGGS, Circuit Judge.  Academic Imaging, LLC, and Newark Health Imaging,

LLC ("NHI"), filed suit against Soterion Corp., Soteria Imaging Services, Inc., and other parties, in

connection with Academic's purchase of Soterion's interest in NHI, which Academic and Soterion

owned jointly.  Academic and NHI brought a number of causes of action in tort and contract,

including conversion, violation of Ohio Rev. Code § 1705.23, breach of fiduciary duty, negligent

misrepresentation and indemnification under the Unit Sale and Purchase Agreement ("Purchase

Agreement").  Soterion and Soteria counterclaimed for indemnification under NHI's Operating

Agreement.  The district court granted summary judgment in favor of Soterion and Soteria on all

claims and counterclaims.  Academic and NHI now appeal from the district court's decision as to

Soterion only.  We affirm the district court's grant of summary judgment in favor of Soterion with

respect to conversion and wrongful distribution, and reverse and remand with respect to breach of fiduciary duty, negligent misrepresentation, and indemnification. We also reverse the grant of summary judgment in favor of Soterion on its counterclaim for indemnification under the Operating Agreement.

## I

Academic, owned by Drs. Donald G. Jones and Nicholas Trifelos, and Soterion entered into an Operating Agreement for the ownership and management of NHI on March 23, 2000. Academic and Soterion each owned half (50) of the membership units in NHI. The Operating Agreement provided that each member would appoint a manager. Academic states that it appointed Dr. Jones as one of the managers, and Soteria was hired as the other manager, responsible for running NHI's day-to-day operations. Matthew Smith, Chief Financial Officer ("CFO") of manager Soteria, was responsible for keeping NHI's books.

NHI was not a profitable business. To help NHI meet its financial obligations, both members contributed capital. Under § 4.4 of the Operating Agreement, "additional capital contributions" required the approval of both members. As Academic became increasingly dissatisfied with the management of NHI, it ceased making capital contributions. Consequently, Smith stated that Soteria had to "look for ways to pay NHI's bills through other means." Some of the money for NHI's bills came from Soterion: over some period of time prior to September 2003, Soterion put in $312,209.96 ("312K" or "disputed amount"). Soterion claims that this money was a loan. Academic claims that it was a capital contribution. Smith stated that the 312K of "advances" made by Soterion were recorded as "accounts payable" on NHI's books, while capital contributions would normally be

credited to Soterion's "capital account." Plaintiffs' expert witness, Michael Kirch, CPA, agreed that the 312K was recorded as a loan on NHI's books initially, but that it should have been "rebooked" as a capital contribution.

As the relationship between the members deteriorated, Soterion sought a buy-out of one member's interest in NHI by the other, as provided by the Operating Agreement.[1] The Operating Agreement also contained a provision governing "Mutual Buy-Out Mechanics," which states in pertinent part that "either Member . . . may offer to purchase the Units of the other Member," that "[t]he offer must state the price that the Offering Member is willing to pay for the Units of the Members," and that "[s]uch offer to purchase automatically constitutes an offer by the Offering Member to sell the Offering Member's Units to the Other Member for the purchase price contained in the written notice." § 9.2. Accordingly, on May 12, 2003, Soterion sent the following letter ("Negotiation Letter") to Academic:

---

[1]9.1 <u>Mutual Buy-Out Events</u>. The events listed below . . . shall trigger the mutual buy-out right . . . :

(a)  If the Company is unable to pay all of its debts . . . as they become due, and, pursuant to Section 4.4., the Members make a request for Additional Capital Contributions and a Member fails to contribute its pro rata share of such Additional Capital Contributions within the time frame specified . . . a mutual buy-out right shall exist for a period of thirty (30) days . . . .

(b) If the Members are unable to agree on Major Decisions, as specified in Section 4.4., a mutual buy-out right shall exist for a period of thirty (30) days following a final determination that agreement as to a Major Decision cannot be reached. For purposes hereof, a "final determination" shall require either (i) a vote of the Members . . .; or (ii) written notice by one Member to the other Member of such Member's refusal to agree to such Major Decision.

> As you have been repeatedly notified by Soterion . . . [NHI] is unable to pay all of its debts, including current operating obligations, as they become due. Soterion *has made voluntary capital contributions to [NHI], totaling $312,209.96* as of the date of this letter, to enable [NHI] to avoid defaulting on its obligations. [Academic] *has refused to make matching capital contributions.* Soterion has requested in writing pursuant to Section 5.4 of [NHI]'s Operating Agreement a members [sic] meeting to discuss *the need for matching capital contributions* by [NHI]'s members, but Academic has refused to participate in any such meeting.
>
> This letter is to inform you that Soterion has made a "Final Determination," as defined in Section 9.1(b) of the Operating Agreement, that Academic has refused to agree to a "Major Decision," as defined in Section 4.4 of the Operation Agreement – the need for additional capital contributions to enable [NHI] to satisfy its current obligations.
>
> Therefore, Soterion hereby implements the Mutual Buy-Out Rights described in Article IX of the Operating Agreement. More specifically, Soterion offers to buy Academic's Units of ownership in Newark for a *purchase price of $551,104.98* (the "Purchase Price").
>
> If Academic accepts this offer, or if it fails to offer to purchase Soterion's Units for that price, within thirty (30) days of the date this letter is transmitted to Academic via fax, *Soterion* shall acquire Academic's Units and *shall receive a credit against the Purchase Price in the amount of $156,104.98, which is 50% of the amount of Soterion's additional capital contributions to Newark that have not been matched by Academic.* If instead, Academic purchases Soterion's Units pursuant to Section 9.2 of the Operating Agreement, the *Purchase Price of Soterion's Units shall be increased by $156,104.98, reflecting 50% of Soterion's unmatched additional capital contributions.*

(emphasis added).[2]

---

[2]It should be noted that while the provision governing buy-out mechanics requires that a member's offer to sell should be for the same price as the offer to purchase, the Negotiation Letter appears to offer two different prices. When asked about the apparent tension between the terms offered in the Negotiation Letter and those dictated by the Operating Agreement, Soteria's CFO Smith thought that the contractual provision was "vague," and confirmed that "we put in two prices in our letter."

On June 2, 2003, Academic responded, stating that it "accept[s] [Soterion's] offer to purchase the assets of [NHI] dated May 12, 2003." Some confusion ensued as to which member was being bought out. Following a resolution of the confusion, in September 2003 the parties executed the Purchase Agreement.

> The Purchase Agreement provides, in relevant part:
>
> 1. Purchase and Sale of Units. Seller [Soterion] agrees to sell, transfer and assign to Purchaser [Academic], and Purchaser agrees to purchase from Seller all Fifty (50) of Seller's Units in the Company on the terms and conditions set forth in this Agreement.
> . . .
> 2. Purchase Price. The total price to be paid by Purchaser to Seller shall be Seven Hundred and Seven Thousand Two-Hundred Nine Dollars and Ninety-Six Cents ($707,209.96) (the "Purchase Price").

The Purchase Agreement contained an integration clause, "supersed[ing] any and all agreements and representations made or dated prior thereto."

In the period of time between the Negotiation Letter and the execution of the Purchase Agreement ("sale," "purchase," or "buy-out"), Soteria repaid Soterion the 312K in several installments.[3] Soterion states that this payment was properly recorded as a loan repayment in NHI's records, which Academic does not dispute. Smith stated that he made the decision to repay the "accounts payable to Soterion" because "the general health of the business improved; there was more cash available, and we were able to start paying ourselves[4] our unmatched capital or loans, advances

---

[3]The record is unclear as to the exact days on which these payments were made.

[4]Soterion states that it owns a minority share in Soteria, but that Soteria and Soterion are wholly separate entities. Nonetheless, Soteria's CFO Smith repeatedly refers to the two entities

made to the business, and the unpaid fees." Academic claimed that it discovered, after the buy-out, that Soterion "converted" $156,104.98 ("156K") prior to closing "that represented Academic's capital contributions that were specifically balanced by raising the purchase price from $551,104.98 to $707,209.96," and that Soterion withdrew an additional 156K "representing their own capital contributions" in violation of the Operating Agreement.

Academic and NHI filed suit against Soterion and Soteria in state court. After voluntary dismissal, a re-filing, and a removal to federal district court by Defendants Soterion and Soteria on diversity grounds, Plaintiffs brought the following claims in their re-filed complaint: conversion, wrongful distribution under Ohio Rev. Code § 1705.23, breach of fiduciary duty, breach of contract,[5] negligent misrepresentation, and indemnification under the Purchase Agreement. Soterion and Soteria filed counterclaims for indemnification under the Operating Agreement, seeking to recoup their costs in defending this case.

Upon motion of Soterion and Soteria, the district court granted summary judgment against Plaintiffs' claims and in favor of Soterion and Soteria's counterclaim. The district court then awarded Soterion and Soteria $177,011.85 in costs and attorney fees. Plaintiffs now appeal the district court's judgment as to Soterion only.[6]

---

together as "we" or "ourselves" when describing Soteria's management of NHI.

[5]Although Plaintiffs list "breach of the Operating Agreement" among the claims on appeal, the appellate brief contains no distinct arguments pertaining to this claim.

[6]Although Soteria is listed as a defendant on the appellate briefs, Plaintiffs make no arguments that summary judgment in favor of Soteria was erroneous.

**II**

**A**

We review a district court's grant or denial of summary judgment *de novo*. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 301 (6th Cir. 2005) (citation omitted). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). "In deciding upon a motion for summary judgment," this court "must view the factual evidence and draw all reasonable inferences in favor of the non-moving party." *Radvansky*, 395 F.3d at 301 (6th Cir. 2005) (citation omitted).

The district court based its disposition of the summary judgment motions on two grounds. First, the district court determined that Plaintiffs' claims for conversion, breach of fiduciary duty, negligent misrepresentation and indemnification "fail as a matter of law" because these are tort claims that "arise solely out of the parties' contractual relationship," and under Ohio law, a "breach of contract claim does not create a tort claim." Second, the district court determined that, to the extent Plaintiffs' claims implicate the Purchase Agreement or allege its breach, they fail because that Agreement is unambiguous and the parol evidence rule precludes consideration of extrinsic evidence to interpret the intent of the parties.[7] We first review Ohio's law on "factually intertwined" tort and

---

[7] The district court stated that "[i]n light of the Court's conclusion that the Unit Sale and Purchase Agreement is unambiguous, Plaintiff's tort claims for conversion, breach of fiduciary duty, negligent misrepresentation and indemnification for alleged misrepresentations, fail as a matter of law." The court's language suggests that these claims fail because the parol evidence rule precludes

contract claims, and Ohio's parol evidence rule, and then determine whether summary judgment was properly granted with respect to each individual claim in light of that law.

Under Ohio law, "the existence of a contract action excludes the opportunity to present the same case as a tort claim." *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 684 N.E.2d 1261, 1270 (Ohio Ct. App. 1996) (quotation marks and citation omitted). When an alleged breach is of a duty that is created by a contract and is "independent of any duty imposed by law, the cause of action is one of contract, not tort." *Cuthbert v. Trucklease Corp.*, 2004-Ohio-4417, at ¶44 (Ohio Ct. App. Aug. 24, 2004) (citation omitted). To be cognizable, a tort claim must allege a breach "of some positive legal duty imposed by law because of the relationship of the parties, rather than from a mere omission to perform a contract obligation." *Ibid.* (quoting *Battista v. Lebanon Trotting Assoc.*, 538 F.2d 111, 117 (6th Cir. 1976)). In a case where, as here, "the causes of action in tort and in contract are factually intertwined, a plaintiff must show that the tort claims derive from the breach of duties that are independent of the contract and that would exist by force of law notwithstanding the formation of the contract." *Ibid.* (internal quotation marks and citation omitted).

As adopted by Ohio courts, "[t]he parol evidence rule states that 'absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements.'" *Galmish v. Cicchini*, 734 N.E.2d 782, 788 (Ohio 2000) (quoting 11 Williston

---

consideration of evidence extrinsic to an "unambiguous" contract; however, in the very next sentence, the court appears to identify Ohio's law on "factually intertwined" tort and contract claims as the reason the enumerated claims fail. We interpret the district court's decision as relying on two independent and alternative grounds.

on Contracts 569-70, § 33.4 (4 Ed. 1999)). The parol evidence rule is not a rule of evidence, but one of substantive contract law, whose "principal purpose is to protect the integrity of written contracts." *Id*. at 789 (citation omitted). Thus, it bars consideration of extrinsic evidence not "for any of the reasons ordinarily requiring exclusion, based on the probative value of such evidence," but "because [extrinsic evidence] cannot serve to prove what the agreement was, this being determined as a matter of law to be the writing itself." *Ibid*.

The parol evidence rule does not serve to bar extrinsic evidence under all circumstances. The limits to its effect are already contained within Williston's formulation of the rule, which was adopted by Ohio courts: the rule will not compel exclusion of evidence when there is "fraud, mistake or other invalidating cause," and it will not compel exclusion of evidence that does not "var[y], contradict[] or supplement[]" an integrated written agreement. *Ibid*. In general, whether the parol evidence rule bars extrinsic evidence depends on the purpose to be served by that evidence in a particular case. "When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence . . . of antecedent understandings and negotiations will not be admitted *for the purpose of varying or contradicting the writing*." *Ed Schory & Sons v. Francis*, 662 N.E.2d 1074, 1080 (Ohio 1996) (quoting 3 Corbin, Corbin on Contracts (1960) 357, Section 573) (emphasis added). However, "[i]n accordance with well established rules . . . parol evidence [i]s admissible *for the purpose of clarifying an ambiguity* in the language used" in a contract. *Charles A. Burton, Inc. v. Durkee*, 109 N.E.2d 265, 271 (Ohio 1952) (emphasis added). And, most pertinent to the instant case, pursuant to the "fraud exception," "the parol evidence rule does not prohibit a party from introducing parol

No. 08-3577
Academic Imaging, LLC. v. Soterion Corp.

or extrinsic evidence *for the purpose of proving fraudulent inducement*." *Galmish*, 734 N.E.2d at 789 (emphasis added).

Its name notwithstanding, the "fraud exception" to the parol evidence rule has been interpreted by Ohio courts to encompass other "invalidating causes" beyond actual "fraud." *See Galmish*, 734 N.E.2d at 788 (parol evidence rule applies "absent fraud, *mistake or other invalidating cause*") (emphasis added); *see also Clemente v. Gardner,* No. 2002-CA-00120, 2004 WL 953700, at *6 (Ohio App. 5 Dist. Apr. 26, 2004) (stating that the parol evidence rule does not forbid proof of fraudulent inducement or negligent misrepresentation); *Brothers v. Morrone-O'Keefe Development Co., LLC,* No. 03AP-119, 2003 WL 22999474, at *7 (Ohio App. 10 Dist. Dec. 23, 2003) (holding that the fraud exception permits consideration of extrinsic evidence in the context of plaintiffs' negligent misrepresentation claim).

The "fraud exception" will not allow consideration of all extrinsic evidence merely because a party couches its allegations in the magic words of fraud, mistake, or other invalidating cause. Ohio courts have explained that the exception does not include "a fraudulent inducement claim which alleges that the inducement to sign the writing was a promise, the terms of which are *directly contradicted* by the signed writing. Accordingly, an oral agreement cannot be enforced in preference to a signed writing which *pertains to exactly the same subject matter, yet has different terms*." *Galmish,* 734 N.E.2d at 790 (emphasis added). In other words, "the parol evidence rule does apply . . . [u]nless the false promise is either independent of or consistent with the written instrument . . . .'" *Id*. at 790-91 (quoting *Alling v. Universal Manufacturing Corp.*, 7 Cal. Rptr. 2d 718, 734 (Cal. Dist. Ct. App. 1992)).

We have previously had occasion to consider what kind of "false promises" are "independent or consistent with the written instrument" under Ohio law. Summarizing the holding in *Galmish*, we explained that "the parol evidence rule did not bar evidence of the breach of contract claim because the extrinsic evidence went to *the making of the contract*, not to a *provision* of that contract." *Glazer v. Lehman Bros.*, 394 F.3d 444, 455 (6th Cir. 2005) (emphasis added). We further explained that evidence illuminating "the making of the contract" – *i.e.*, "fraud in the inducement" – is admissible when it seeks to show "a fraudulent *misstatement of fact* that induces a party to enter a contract," by contrast with "a fraudulent *promise of future performance* that is within the scope of the subject matter of the written contract but that was not included in it." *Watkins & Son Pet Supplies v. Iams Co.*, 254 F.3d 607, 613 (6th Cir. 2001) (emphasis added) (citations omitted). Extending the logic to invalidating causes other than fraud, extrinsic evidence of a negligent "misstatement of fact" that induces a party to enter a contract is admissible, but evidence of a false "promise of future performance" made negligently or by mistake that is within the scope of the written contract is barred.

Soterion asserts that all of Plaintiffs' claims hinge on extrinsic evidence that is barred by the parol evidence rule because Plaintiffs seek to use it for the impermissible purpose of adding to, or varying from, the terms of the unambiguous Purchase Agreement. According to Soterion, all of Plaintiffs' claims amount to the argument that "the Negotiation Letter entitles Academic to exchange the purchase price for both Soterion's NHI units, and for the repayment of Soterion's loan, which [Plaintiffs] claim was a capital contribution." Appellee's Br. at 20. We disagree. Not all of

No. 08-3577
Academic Imaging, LLC. v. Soterion Corp.

Plaintiffs' claims seek consideration of extrinsic evidence for the same purpose. To determine whether the parol evidence rule bars the Negotiation Letter, we must review each claim individually.[8]

## B

### 1

Plaintiffs' first claim is for conversion. To prevail on a conversion claim, a plaintiff must establish "(1) plaintiff's ownership or right to possession of the property at the time of conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." *Dream Makers v. Marshek*, 2002-Ohio-7069, ¶19 (Ohio Ct. App. Dec. 19, 2002) (citation omitted). As in all tort actions that are "factually intertwined" with a contract, "[i]n conversion actions, Ohio Courts have held, '[s]uch tort claim lies against a contracting party independent of a breach of contract claim so long as the plaintiff alleges a breach of a duty owed separately from obligations created by the contract.'" *Jean v. Stanley Works*, No. 1:04-CV-1904, 2006 U.S. Dist. LEXIS 50027, at *14 (N.D. Ohio July 5, 2006) (quoting *DeNune v. Consol. Capital of N. Am., Inc.*,

---

[8]We recognize that Plaintiffs did not explicitly rely on the fraud exception to the parol evidence rule in the proceedings below. While generally, arguments not raised below are waived, we have "deviated from the general rule in exceptional cases or particular circumstances or when the rule would produce a plain miscarriage of justice." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008) (internal quotation marks and citation omitted). Our exercise of discretion in this regard is guided by several factors, including, *inter alia*, "whether the issue newly raised on appeal is a question of law, or whether it requires or necessitates a determination of facts," and "whether failure to take up the issue for the first time on appeal will result in a miscarriage of justice or a denial of substantial justice." *Ibid*. Because the application of the parol evidence rule on summary judgment presents a question of law, and because failure to consider the issue will result in a denial of substantial justice, this case presents the "particular circumstances" warranting deviation from the general rule.

288 F. Supp.2d 844, 854 (N.D. Ohio 2003)). Here, the "wrongful act" alleged must be wrongful for reasons other than breach of a contract.

The "wrongful act" implicated by Plaintiffs' claim is Soterion's allegedly wrongful collection of 312K prior to the sale. The collection of 312K would only be wrongful under one of two scenarios. It would be wrongful if the 312K were in fact a capital contribution – even if the buy-out never took place – because its collection would violate the Operating Agreement, which allows only those distributions that have been approved by the majority of the managers. But for that provision in the Operating Agreement, no duty would be violated by accepting a repayment of an alleged capital contribution without approval of the majority of the managers. The collection of the 312K could also be wrongful if it violated an alleged understanding set forth in the Negotiation Letter that the mark-up of the purchase price was intended to constitute the entirety of the funds that Soterion would receive to compensate it for those contributions. If it is presumed, *arguendo*, that this understanding was a part of or implicit in the terms of the buy-out, then this claim would be based on an alleged breach of a contractual duty incurred under the Purchase Agreement. Under either scenario, the district court's conclusion that "the existence of a contract action excludes the opportunity to present the same case as" as a tort claim for conversion, is not erroneous.

Plaintiffs argue that an independent duty breached by Soterion may be found in the fiduciary relationship that exists between members of a limited liability company. Appellants' Br. at 30. As we explain below, we agree that Soterion had a duty to act in utmost good faith, beyond that required in the context of an arm's length transaction. However, the fiduciary relationship cannot support Plaintiffs' conversion claim, even if Soterion's collection of 312K prior to the sale at a marked-up

purchase price also violated its fiduciary duties. Ohio law requires that "[i]n addition to containing a duty independent of that created by contract, an action arising out of contract which is also based upon tortious conduct must include actual damages attributable to the wrongful acts of the alleged tortfeasor which are in addition to those attributable to the breach of the contract." *Textron Fin. Corp.*, 684 N.E.2d at 1271. The actual damages resulting from the alleged conversion would necessarily be identical to those resulting from the corresponding breach of the Operating Agreement's provision on distributions and/or the ostensible breach of the Purchase Agreement. Thus, insofar as the conversion claim is based on the collection of monies in violation of the Operating and/or Purchase Agreements, it fails as a matter of law.

Thus, we affirm the district court's grant of summary judgment in favor of Soterion on the conversion claim.

**2**

Second, Plaintiffs claim that Soterion breached the fiduciary duty it owed to Academic, its fellow member of a limited liability company. Soterion allegedly breached that duty by misrepresenting that their 312K loan was a capital contribution, by failing to disclose their "mistake" to Academic when it was discovered, and by collecting the repayment of 312K after securing a higher purchase price for its share of NHI as a result of its mistaken representation.

"A claim of breach of fiduciary duty is basically a claim for negligence that involves a higher standard of care. In order to recover, one must show the existence of a duty on the part of the alleged wrongdoer not to subject such person to the injury complained of, a failure to observe such duty, and an injury proximately resulting therefrom." *McConnell v. Hunt Sports Enters.*, 725 N.E.2d 1193,

1215 (Ohio Ct. App. 1999) (citing *Strock v. Pressnell*, 527 N.E.2d 1235 (1988)). The "existence" of the duty implicated in this claim is well established in Ohio, whose courts treat the fiduciary duties owed by members in a limited liability company as substantially the same as those owed by partners in a partnership. *Blair v. McDonagh*, 894 N.E.2d 377, 387 (Ohio Ct. App. 2008) ("[A] limited-liability company, like a partnership, involves a fiduciary relationship . . . [that] imposes on the members a duty to exercise the utmost good faith and honesty in all dealings and transactions related to the company."); *see also McConnell*, 725 N.E.2d at 1216. Those duties, famously described by Judge Cardozo as demanding "[n]ot honesty alone, but the punctilio of an honor the most sensitive," *Meinhard v. Salmon*, 164 N.E. 545, 547 (N.Y. 1928),[9] have been described by Ohio courts as:

> impos[ing] on the members of the firm the obligation of the utmost good faith in their dealings with one another with respect to partnership affairs, of acting for the common benefit of all the partners in all transactions relating to the firm business, and of refraining from taking any advantage of one another by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind.

---

[9]The full text of Judge Cardozo's holding is informative:

> Joint adventurers, like copartners, owe to one another, while the enterprise continues, the duty of the finest loyalty. Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the "disintegrating erosion" of particular exceptions (*Wendt v. Fischer*, 243 N. Y. 439, 444). Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd. It will not consciously be lowered by any judgment of this court.

*Meinhard v. Salmon*, 164 N.E. 545, 547 (N.Y. 1928).

*Lorain Nat'l Bank v. Saratoga Apartments*, 572 N.E.2d 198, 200 (Ohio Ct. App. 1989) (quotation marks and citation omitted).

Plaintiffs allege that Soterion breached these duties by "taking advantage" of Academic by misrepresentation of a material fact, and by failing to disclose that such fact was misrepresented once Soterion realized that it had done so. As the Ohio Supreme Court explained, "[o]rdinarily in business transactions where parties deal at arm's length, . . . neither party has a duty to disclose material information to the other." *Blon v. Bank One, Akron, N.A.*, 519 N.E.2d 363, 367 (Ohio 1988). However, "a party to a business transaction in a fiduciary relationship with another is bound to make a full disclosure of material facts known to him but not to the other," or "where such disclosure is necessary to dispel misleading impressions that are or might have been created by partial revelation of the facts." *Ibid.* (internal quotation marks and citations omitted).

The district court determined that this claim is no different from Plaintiffs' other tort claims in that it alleges a breach of duties that are purely contractual, and thus, it fails as a matter of law. We disagree with the district court's determination for two reasons. First, it is doubtful that the particular acts that allegedly breached Soterion's fiduciary duty could form a basis for independent contract actions. The allegation that Soterion breached a duty by collecting as a loan an amount it had *represented* to Academic to be a capital contribution is patently not an assertion that any contract has been breached. It cannot be reduced to a breach-of-contract claim that the amount was *in fact*

a capital contribution and that its collection violated the Operating Agreement.[10] Second, even if this claim were "intertwined" with a breach-of-contract claim, the very nature of this allegation implicates a duty independent of contractual provisions, the fiduciary duty. *See Solid Gold Jewelers v. ADT Sec. Sys.*, 600 F. Supp. 2d 956, 960 (N.D. Ohio 2007) ("An 'exception' to the general rule does exist, but only 'in those contract situations where a special or fiduciary relationship exists between the parties and imposes a duty of good faith will the breach of [contract] result in a tortious cause of action.'") (quoting *Schachner v. Blue Cross and Blue Shield of Ohio*, 77 F.3d 889, 897 (6th Cir. 1996)).

Further, Plaintiffs must rely on the Negotiation Letter to create a genuine issue of material fact as to the breach of fiduciary duty. Thus, we must determine whether the parol evidence rule prevents Plaintiffs from employing the Negotiation Letter to do so. The parol evidence rule does not bar Plaintiffs from using the Negotiation Letter for the purposes it serves in the context of this claim. Plaintiffs seek to show that Soterion's misrepresentation of a fact, and its subsequent failure to inform Academic that a "mistake" was made, induced Academic to agree to the buy-out and to accept a higher purchase price. The representation that the 312K was a capital contribution and that the purchase price was calculated so as to compensate for the imbalance in capital contributions between the two owners of NHI are "independent of" and "consistent with" the Purchase Agreement. It is plain that Plaintiffs do not seek to create or enforce any contractual terms that are not in the Purchase Agreement but "pertain[] to exactly the same subject matter" covered by the Purchase

---

[10]By contrast with Plaintiffs' conversion claim, which fails because it can be so reduced.

Agreement. *See Galmish,* 734 N.E.2d at 790. The method whereby the proposed purchase price was calculated by Soterion is consistent with that Agreement: the effective purchase price proposed in the Letter is the same purchase price that appears in the Agreement. The representations made in the Letter are precisely the kinds of "misstatement[s] of fact that induce[] a party to enter a contract," which trigger the fraud exception, as opposed to false "promise[s] of future performance that [are] within the scope of the subject matter of the written contract but that [were] not included in it," which are outside that exception. *See Watkins*, 254 F.3d at 613.

Plaintiffs are entitled to introduce the Negotiation Letter for the purposes of showing how Soterion's alleged breach of fiduciary duty induced Academic to agree to the buy-out on Soterion's terms. The record presents more than sufficient admissible evidence that Soterion failed to behave with the requisite honesty and transparency toward Academic, to whom it owed a heightened duty of care, to create a genuine issue of material fact. Even presuming Soterion's initial misrepresentation was merely an innocent mistake, once Soterion realized that operative facts were misstated, it failed to communicate its discovery – and its collection of an amount it previously represented as a capital contribution – to Academic, under circumstances where "such disclosure [wa]s necessary to dispel misleading impressions that [were] . . . created by partial revelation of the facts." *See Blon*, 519 N.E.2d at 367. Thus, we reverse the district court's grant of summary judgment with respect to Plaintiffs' breach-of-fiduciary-duty claim.

**3**

No. 08-3577
Academic Imaging, LLC. v. Soterion Corp.

Plaintiffs bring their third claim, alleging wrongful distribution in violation of Ohio Rev. Code § 1705.23, on behalf of NHI. Section 1705.23 governs a "[m]ember's liability for return of unauthorized distribution or payment," and states in relevant part:

> A member who knowingly receives any distribution or payment made contrary to the articles of organization or the operating agreement of a limited liability company is liable to the company for the amount received by him that is in excess of the amount that could have been paid or distributed without a violation of the articles or the operating agreement.

The district court determined that this claim fails because it is "based on an interpretation of the sale that is at odds with the unambiguous terms of" the Purchase Agreement, and the parol evidence rule precludes the consideration of extrinsic evidence in support of that interpretation. On its face, this statutory cause of action lies for a violation of the "operating agreement of a limited liability company," and does not call for an interpretation of the Purchase Agreement. It does, however, require Plaintiffs to establish that an issue of material fact exists with regard to a question at the heart of this claim – whether the disputed amount is a loan or a capital contribution. This Plaintiffs cannot do without using the Negotiation Letter to add a term to the Purchase Agreement, a purpose for which extrinsic evidence may not be used under the parol evidence rule.

In the proceedings below, Plaintiffs' argument that Soterion unlawfully collected the disputed amount relied in part on a theory that the 312K *in fact* was recorded as a capital contribution, at least on NHI's tax returns. Soterion asserts that this was shown to be inaccurate because NHI's 2002 tax returns did not report the amount as a loan, and showed both members'

- 19 -

capital contributions to be balanced.[11]  Irrespective of the merits of Soterion's assertion, Plaintiffs

do not resurrect this line of argument on appeal and adopt a different theory in support of their

wrongful distribution claim.  Plaintiffs concede that the 312K was not booked as a capital

contribution initially, but argue that Soterion was obligated to re-characterize it as a contribution

after Academic agreed to the buy-out as per the Negotiation Letter.  Such a re-characterization would

conform to past practice, Plaintiffs submit, because in previous years Soterion would book capital

contributions as loans (accounts payable) and re-characterize them after they were "matched" by

Academic.

The essence of Plaintiffs' current argument is that the 312K became a capital contribution

only when Soterion incurred a legal obligation to book it as such.  The alleged wrongfulness of the

distribution depends on reading such an obligation into the terms of the sale.  This would require

using extrinsic evidence to "supplement" the unambiguous Agreement, which is not permitted by

the parol evidence rule.  The fraud exception is inapplicable as no misrepresentations of *fact* are

alleged by this claim.  At most, the alleged understanding that the 312K would be re-characterized

as a contribution after the buy-out is a false "promise of future performance" that was not written

into the Purchase Agreement, extrinsic evidence of which is also barred by the parol evidence rule.

*See Watkins & Son Pet Supplies*, 254 F.3d at 613.  Because Plaintiffs point to no other evidence on

---

[11]We are not persuaded that the way the amount was reported in the tax returns demonstrates decisively that it was in fact a loan.  The tax forms designated for the record on appeal are unsigned and undated, and it very well may be that they were filed after Academic agreed to the buy-out or even after it signed the Purchase Agreement.  However, Plaintiffs chose not to pursue this line of argument.

the record, beyond the Negotiation Letter, to support the contention that the repayment of 312K to Soterion was contrary to the Operating Agreement, no admissible evidence exists to create an issue of material fact with regard to this claim. We affirm the district court's grant of summary judgment with respect to this claim.

**4**

Plaintiffs' next claim is for negligent misrepresentation. Such a claim lies against a party, "who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions . . . if he fails to exercise reasonable care or competence in obtaining or communicating the information." *Greenberg v. Life Ins. Co.*, 177 F.3d 507, 517 (6th Cir. 1999) (internal quotation marks and citations omitted). The alleged tortfeasor's liability in a negligent misrepresentation suit is limited to "pecuniary loss caused to [a party] by their justifiable reliance upon the information." *Ibid*.

This is not a tort claim that is "based upon the same actions as those upon which a claim of contract breach is based." *Textron Fin. Corp.*, 684 N.E.2d at 1270. None of the elements of the claim suggest, imply, or depend on a breach of a contract: Plaintiffs allege a negligent inducement to enter into a contract, not a breach of a contractual obligation. The district court erred in granting summary judgment with regard to negligent misrepresentation on the grounds that a "breach of contract claim does not create a tort claim."

The parol evidence rule, furthermore, does not bar the use of the Negotiation Letter for the purposes of showing that in the "course of . . . business . . . or in any other transaction in which

[Soterion] has a pecuniary interest," Soterion "supplie[d] false information for the guidance of others in their business transactions." *Greenberg*, 177 F.3d at 517. For the same reasons that the parol evidence rule does not bar the Negotiation Letter for the purposes implicated by the alleged breach of fiduciary duty, it does not compel its exclusion for the purposes of negligent misrepresentation. *See Brothers*, 2003 WL 22999474, at *6 (holding that the parol evidence rule did not bar plaintiffs' attempt "to adduce evidence . . . to show material [negligent] misrepresentations relative to the subject matter of the contract whereby plaintiffs were induced to enter into the contract"); *Clemente*, 2004 WL 953700, at *6 (same).

Soterion argues that summary judgment on this claim was appropriate for yet another reason: there is no genuine issue of material fact with regard to Academic's "justifiable reliance" on Soterion's representations. Appellee's Br. at 31-32. Soterion points out that Academic did not perform due diligence prior to entering into the Purchase Agreement, although Academic had full access to NHI's records, wherein "[t]he re-payment of the loan to Soterion was clearly evidenced." Because Academic was ready to close without "first reviewing collections, expenses, and other financials," Soterion argues, its reliance on information that it could itself verify was unreasonable as a matter of law.

While Plaintiffs do not dispute that they did not review NHI's finances prior to closing, they argue that in the context of a fiduciary relationship, it was justifiable for them to trust and not verify. We agree that Academic's failure to perform due diligence is not tantamount to unjustifiable reliance in the context of a fiduciary relationship.

To determine whether reliance is justifiable, Ohio courts "consider the various circumstances involved, such as the nature of the transaction, the form and materiality of the representation, the relationship of the parties, the respective intelligence, experience, age, and mental and physical condition of the parties, and their respective knowledge and means of knowledge." *Finomore v. Epstein*, 481 N.E.2d 1193, 1196 (Ohio Ct. App. 1984) (internal quotation marks and citation omitted). Reliance on a false representation by a seller, for example, "may be justified if the representation does not appear unreasonable on its face and if the purchaser has no apparent reason to doubt its veracity." *Greenberg*, 177 F.3d at 516 (citation omitted). Ohio courts have also held that the doctrine of *caveat emptor*, with the obligation to investigate that it entails, does not always apply in a fiduciary context because fiduciary duties demand a greater degree of honesty and loyalty than arm's-length transactions. *See Pettit v. Hughes*, 894 N.E.2d 738, 741 (Ohio Ct. App. 2008) ("Because of the affirmative obligations arising from the fiduciary relationship between a real estate agent and his clients, the defense of *caveat emptor* does not apply when a real estate agent fails to disclose to his clients facts which were known or should have been known by him that are material to the transaction."); *see also Allison v. Cook*, 744 N.E.2d 254, 264 (Ohio Ct. App. 2000).

"The question of justifiable reliance is one of fact and requires an inquiry into the relationship between the parties." *Lepera v. Fuson*, 613 N.E.2d 1060, 1065 (Ohio Ct. App. 1992). Academic and Soterion were in a fiduciary relationship, and Academic had "no apparent reason to doubt [the] veracity" of its co-owner's representations, *Greenberg*, 177 F.3d at 516. There is evidence in the record that even Soterion and Soteria believed that Academic was entitled to rely on the representations made in the Negotiation Letter. In his deposition, Smith, Soteria's CFO, confirmed

that he was "involved in computing the numbers" in the Negotiation Letter, that he had a responsibility to report these accurately, and that Academic had a right, and was expected, to rely on the Letter.[12]  Whether Soterion "supplie[d] false information for the guidance of others in their business transactions," whether Soterion "fail[ed] to exercise reasonable care or competence in obtaining or communicating the information," and whether Academic justifiably relied on Soterion's representations, present genuine issues of material fact that preclude summary judgement. Therefore, we reverse the order granting summary judgment on the claim of negligent misrepresentation.

**5**

Plaintiffs' final claim is for indemnification under the Purchase Agreement.  The provision at issue states:

10.1 Seller agrees to indemnify and hold harmless Purchaser and/or the Company on and after the Closing Date with respect to any claim, action, demand, loss, cost,

---

[12] Smith's deposition contained the following exchange:

Q: Who chose the account classifications for characterizing money with respect to Newark Health Imaging?
[Smith]: I guess that would be me.
Q: Do you believe that you had a responsibility to report that information accurately?
[Smith]: Yes.
Q: Do you believe that Doctors Jones and Trifelos had a right to rely upon what you reported to them?
[Smith]: Yes.
Q: Would you expect them to rely on it?
[Smith]: Yes.
Q: Would you have expected them to rely upon the information contained in this [Negotiation] letter?
[Smith]: Yes.

> expense, liability (joint or several), penalty, and other damage, including without limitation, counsel fees and other costs reasonably incurred in investigating or attempting to avoid or oppose the imposition of damages or in enforcing this indemnity, resulting to Purchase and/or the Company from any of the following:
>
> > a. Any *inaccurate representation made by or on behalf of the Seller in or pursuant to* this Agreement; . . .

(emphasis added). Insofar as the district court held that this claim fails because it is a tort claim arising out of a contract, that determination is erroneous. This claim does not sound in tort, but seeks to enforce a contractual provision.

Plaintiffs argue that Soterion's representations, which induced Academic to enter into the contract, are "inaccurate representations made . . . in or pursuant to this Agreement." Soterion argues that representations made in the Negotiation Letter are not made "in or pursuant to" the Agreement, and that in any case, the Letter itself is barred by the parol evidence rule. We agree that the representations at issue in this suit are not "in" the Agreement. However, it is considerably less clear whether they are made "pursuant to" the Purchase Agreement.

"When interpreting an indemnity agreement between commercial parties of equal bargaining power, a court bound by Ohio law must construe the words used in the agreement 'in their ordinary and popular sense.'" *Lubrizol Corp. v. Nat'l Union Fire Ins. Co.*, 200 F. App'x 555, 562 (6th Cir. 2006) (quoting *Glaspell v. Ohio Edison Co.*, 505 N.E.2d 264, 267 (Ohio 1987)). Unfortunately, the ordinary and popular sense of "pursuant to" does not illuminate the import of the provision at issue. The Oxford English Dictionary defines "pursuant to" as "[f]ollowing upon, consequent and in conformance to; in accordance with." THE OXFORD ENGLISH DICTIONARY (2nd ed. 1989). While

this definition suggests a temporal connotation – *i.e.*, a statement "following upon" or made "consequent to" an agreement – Plaintiffs urge this court to adopt a Virginia federal district court's interpretation of the same language in a different context. Appellants' Rep. Br. at 20 (citing *United States v. El-Amin*, 268 F. Supp. 2d 639, 641 (E.D. Va. 2003)). That court decided that "[t]he ordinary meaning of 'pursuant to this agreement' is 'according to this agreement' or 'in conformity with this agreement[,]'" which "clearly embraces statements made as a part of the plea agreement process" prior to the conclusion of the plea agreement. *El-Amin*, 268 F. Supp. 2d 639, 641 (E.D. Va. 2003).

While the weight of that authority is not overwhelming, the interpretation does accord with common sense, and is further supported by the text employed in the rest of the indemnification provision. Part (c) of § 10.1 provides for indemnification for the losses resulting from "[b]reach or default in the performance by Seller of any of the obligations to be performed by it *under this Agreement*." The difference in the language chosen to specify what kinds of breaches of obligations and what kinds of inaccurate representations trigger the indemnification provision, suggests that the parties intended "in or pursuant to" to mean something other than "under" the Agreement. The *El-Amin* interpretation of "pursuant to" is at least plausible if the term is to have any meaning distinct from "in," and if the difference between § 10.1(a) and § 10.1(c) is to be given effect. There is therefore a genuine issue of material fact as to whether Soterion made "inaccurate" representations "pursuant to" the Purchase Agreement. A remand will afford the parties an opportunity to argue the issue fully and, if necessary, resort to extrinsic evidence to illuminate the parties' intent as to the provision in question.

As we explained above, the parol evidence rule does not compel exclusion of the Negotiation Letter if it is introduced for the limited purpose of showing that misrepresentations of fact, which are independent of and consistent with the Agreement, were indeed made. Thus, we reverse the order granting summary judgment with respect to this claim.

**6**

The district court also granted summary judgment in favor of Soterion and Soteria on their counterclaim for indemnification under § 13.1 of the Operating Agreement, subsequently awarding both defendants a total of $177,011.85 in costs and attorney fees. Section 13.1 indemnifies members and managers for legal expenses incurred in suits over actions taken "in good faith" and "in the best interest of [NHI]." Because we find that summary judgment in favor of Soterion was premature for some claims, it is likewise premature to conclude that Soterion's actions were taken in the best interests of NHI or in good faith. We thus reverse summary judgment in favor of Soterion with regard to its counterclaim for indemnification. However, Academic does not challenge the grant of summary judgment in favor of Soteria, both with regard to Plaintiffs' claims and Soteria's counterclaim for indemnification. The district court did not distinguish between the fees and costs incurred by Soterion and those incurred by Soteria; thus, on remand, the district court must revisit the issue of the amount due to Soteria under its judgment and consistent with this opinion.

**III**

For the reasons stated above, we AFFIRM in part and REVERSE in part. We REMAND for further proceedings consistent with this opinion.